# Exhibit "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| SGT. RICHARD CORDER and DHARMA CORDER, individually and on behalf of themselves and as Representatives of a Class of all other similarly situated, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § § | CIVIL ACTION W-11-CA-264 |
| BBG COMMUNICATIONS, INC.; BBG GLOBAL, AG, A limited liability company; and DOES 1 through 10, inclusive | § § § § | |
| Defendants. | § § | |

## DEFENDANTS BBG COMMUNICATIONS, INC. AND BBG GLOBAL, AG'S MOTION TO DISMISS

TO THE HONORABLE WALTER S. SMITH, JR.:

Defendants BBG Communications, Inc. ("**Comm**") and BBG Global, AG ("**Global**") (collectively "**Defendants**") respectfully submit this Motion to Dismiss Plaintiffs Sergeant Richard Corder and Dharma Corder ("**Plaintiffs**") First Amended Complaint ("**FAC**") pursuant to FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), 12(b)(2), and 12(b)(6).

## I.    PRELIMINARY STATEMENT

This is not the first time Plaintiffs' counsel have attempted to sue Defendants. These same California attorneys filed a nearly identical action against Comm, and tried to amend to add Global, in the Southern District of California— *Sajfr v. BBG Communications, Inc.*, Civ. No. 10-cv-2341, 2012 U.S. Dist. LEXIS 15198 (S.D. Cal. Jan. 10, 2012) ("*Sajfr*")—alleging that Comm failed to disclose almost identical rates at a public payphone at the airport in Frankfurt, Germany. Despite counsels' best efforts to falsely present Comm as a corporate monster out to defraud hard

working Americans, rationality prevailed, and the court granted summary judgment in Comm's favor. In relevant part, the court first held that Comm and Global were not alter egos. *Id.* at \*5-\*11. It next held that the plaintiffs could not bring their claims in California because California law could not apply to disclosures made at an airport in Germany, especially where the disclosures complied with German law. *Id.* at \*12-\*15.

The law has not changed since *Sajfr*, nor have the facts. With both the law and the facts against them, Plaintiffs' counsel have followed the age old lawyers' adage of if you can argue neither the law nor the facts, attack your opponent. In a creative twist on that old play, Plaintiffs' counsel have also selected the most sympathetic plaintiffs—members of the United States military—in the hopes that the Court's understandable admiration for these service members will lead it to disregard well settled legal principles and apply Texas law to disclosures made in connection with a payphone at an airport in Germany. [*See, e.g.*, FAC ¶ 2.] The fact that we are—and should be—eternally grateful for Sgt. Corder's service, however, cannot justify pushing aside the very principles of democracy and international law that Sgt. Corder and other members of our military have fought to preserve.

More specifically, Sgt. Corder made a phone call to his wife in Texas from a payphone located at the airport in Leipzig, Germany, and now contends that the manner in which rates were disclosed was insufficient under ***Texas*** law. Plaintiffs' request to apply Texas law to a payphone on German soil runs afoul of fundamental principles of the United States Constitution and international law. First, a North Atlantic Treaty Organization (**"NATO"**) treaty specifically provides that German law applies to telecommunications services used by United States troops on German soil. Second, principles of international comity require that the United States recognize Germany's sovereignty and right to control activity occurring on its soil. This is

-2-

especially true here because the United States has recognized, both by the NATO treaty

referenced above and the *International Telecommunications Regulations* treaty, that it is "the

sovereign right of each country to regulate its telecommunications," and the acts about which

Plaintiffs complain are legal under German law. Third, it is well recognized—as part of the

presumption against extraterritoriality and the Dormant Commerce Clause of the United States

Constitution—that Texas law cannot apply to disclosures made in Germany. Finally, Texas's

choice of law rules dictate that German law should apply here, as Germany has the only

significant relationship to the conduct at issue. Thus, Plaintiffs' FAC should be dismissed.

Defendants made nearly all of the above arguments in response to Plaintiffs' Complaint.

Rather than address them, Plaintiffs merely added Centris Information Services, LLC

("**Centris**") as a defendant. The addition of Centris, which allegedly provides "operational

support" services [FAC ¶ 3], does not defeat Defendants' arguments. As the court determined in

*Sajfr*,

> Plaintiffs also insist that the telephone calls at issue 'touched the
> United States' by being routed through switches in the United
> States and being rated and billed from San Diego. However, as
> BBG points out, the Complaint is based on alleged nondisclosures
> at the point of sale, not on connecting or billing a call.

Here, too, the allegation that Centris, a Texas company, routed Sgt. Corder's call does not change

the fact that Plaintiffs' lawsuit arises out of disclosures made in Leipzig, not Texas. In fact, as

Plaintiffs (and their lawyers) are well aware, one stated basis for bringing Centris into this

lawsuit—*i.e.*, that it, from its facilities in Texas, allegedly programmed phones at the Leipzig

Airport not to accept calling cards—is made up out of whole cloth. As stated under oath in the

declaration submitted with Defendants' motions to dismiss the Complaint, avanticom, the

payphone owner, blocked access to calling cards because it does not receive any compensation

or payphone access charge for uncontracted calling methods.  Plaintiffs have no good faith basis

for adding Centris, and it intends to pursue relief pursuant to FED. R. CIV. P. 11.

Plaintiffs' Claims should be dismissed for the following additional reasons:

- Mrs. Corder lacks standing to bring any claim arising out of nondisclosures allegedly made to Sgt. Corder while he was in Germany.  Mrs. Corder did not place the phone call that forms the basis of Plaintiffs' Complaint, nor were any alleged non-disclosures made to her.  Mrs. Corder is not even a member of the proposed class.

- There is no personal jurisdiction over Defendants in Texas.  Defendants have no systematic contacts in Texas sufficient to give rise to general jurisdiction over them, and Plaintiffs' claims do not arise out of any contact that Defendants have in Texas, meaning that there is also no specific jurisdiction over Defendants.

- The thrust of Plaintiffs' claims is that Defendants did not sufficiently disclose the rates associated with the call that Sgt. Corder made from Leipzig, Germany.  However, Defendants' alleged method of disclosure (*i.e.*, prompting the caller to press "3" for rate information) is perfectly legal under German law, United States federal law, and even Texas law, upon which Plaintiffs base their claims.

- To the extent that Plaintiffs' claims challenge the rates for the call that Sgt. Corder made in Leipzig or require the Court to determine a reasonable rate, their claims are preempted by the Federal Communications Act.  *See* Section III(C)(6).

Thus, Defendants respectfully request that the Court dismiss Plaintiffs' claims.

## II.  RELEVANT FACTUAL BACKGROUND

### A.  Plaintiffs' Allegations Regarding Sgt. Corder's Phone Call.

Plaintiffs allege that Sgt. Richard Corder placed a phone call to his wife from a payphone

located at the airport in Leipzig, Germany in May 2011.  [FAC ¶ 20.]  Plaintiffs allege that Sgt.

Corder "used his family's joint account VISA debit card" to pay for the phone call, and that

Global charged Sgt. Corder $41.14, even though it lasted only four seconds.  [*Id.*]  Plaintiffs

allege that the phone that Sgt. Corder used did not sufficiently disclose the rates that Sgt. Corder

would be charged for his phone call.  More specifically, Plaintiffs allege that "[t]here were no

disclosures on the phone [Sgt. Corder] used of the fees BBG would automatically charge or that

any call would cost a minimum of $40.00 per telephone call, nor any clear and conspicuous instructions on the phone how to find out such charges. " [*Id.* ¶ 28.][1]

Plaintiffs, in response to Defendants' motion to dismiss their Complaint and to shore up the alleged connection between their lawsuit and this forum, have added Centris, a Texas entity, as an alleged "co-conspirator." [FAC ¶ 6.] Plaintiffs allege that Centris instructs its human operators not to disclose rates and fees "unless specifically asked." [*Id.* ¶ 6]. They also allege that Centris—from its facilities in Texas—somehow programmed phones at the Leipzig Airport not to accept calling cards. [*Id.* ¶ 35.] Plaintiffs do not allege either that (1) Sgt. Corder spoke with a Centris operator or (2) Sgt. Corder would have used a calling card to call home had that option been available.

### B.    Additional Relevant Facts Regarding Sgt. Corder's Phone Call And The Services Provided At The Relevant Payphone.

Although Plaintiffs have sued both Global and Comm, Global—and not Comm— provides telecommunication services in connection with the payphone that Sgt. Corder used in Leipzig, Germany. [Galicot Decl. ¶¶ 2, 4-5; Fedier Decl. ¶ 4-5, 9.] Global provides those telecommunications services pursuant to a contract between it and avanticom, a Germany entity that operates payphones throughout Germany, including at the Leipzig airport. [avanticom Decl. ¶ iii.] avanticom—not Global or Comm—is responsible for the artwork on the payphones at the Leipzig Airport, which, in any event, does not provide *any* information about rates. [*Id.* ¶ v, Ex. B].

avanticom also dictates how Global discloses rates to customers who place credit card calls. [*Id.* ¶¶ iv-v.] More specifically, in compliance with German law, when a caller, including

---

[1] Notably, Plaintiffs allege nothing about whether, during the course of a call, a caller is prompted to press "3" to obtain rate information because to do so would eviscerate their non-disclosure theory.

Sgt. Corder, uses an avanticom payphone to place a credit card call, after the caller has entered certain information necessary to determine the type of call, termination destination, and payment method, the caller is specifically prompted to press "3" for rate information. [*Id.* ¶ iv.] If the caller presses "3", then the caller is provided with a rate quote for the minimum call duration and extra minute charges. If the caller does not choose to press "3", then the call is simply connected. [*Id.*] In addition, as Plaintiffs admit, when a caller places an operator assisted call, he may obtain rate information simply by asking the operator. [FAC ¶ 6; avanticom Decl. ¶ iv.]

Finally, avanticom—and not Comm or Global, let alone Centris—determines which services are available from its payphones. [avanticom Decl. ¶¶ vi-viii.] As is commonplace in the telecommunications industry, avanticom blocks calling methods at the Leipzig Airport, such as calling cards, that do not result in any compensation for avanticom. [*Id.* ¶ 6.]

### C.   Comm And Global Do Not Have Substantial Contacts With Texas

Comm is a Delaware corporation headquartered in San Diego, California. [Galicot Decl. ¶¶ 2, 6.] Comm does not maintain an office in Texas or otherwise own real property in Texas. [*Id.* ¶ 6-8.] Comm does not store or maintain any records in Texas, either, and none of Comm's officers, directors, or employees reside or work in Texas. [*Id.* ¶¶ 6-8.]

Global is a Swiss corporation with its principal place of business in Baar, Switzerland. [Fedier Decl. ¶ 3.] Global does not provide any services in North America, let alone Texas. [*Id.* ¶ 5.] It does not maintain an office in Texas, nor does it have any officers, directors, or employees that reside in or work in Texas. [*Id.*] Global is not licensed to do business in Texas, nor does it solicit or engage in business in Texas. [*Id.*] Finally, Global does not have an agent for service of process in Texas. [*Id.*]

Plaintiffs have alleged a single contract with a Texas company for both Global and Comm: a contract with Centris, in which neither Global nor Comm has an ownership interest.

[Galicot Decl. ¶ 10; Fedier Decl. ¶ 8.]  Centris provides automated live operator services for both

Comm and Global, but it has no role in setting or otherwise determining their rates.  [Freeman

Decl. ¶ 7.]  Moreover, avanticom, not Centris, determines how rates are disclosed.  [avanticom

Decl. ¶ ii, iv-vi.]

## III.   ARGUMENT

### A.   There Is No Subject Matter Jurisdiction Over Mrs. Corder's Claims.

Mrs. Corder must show that she meets the standing requirements imposed by Article III

of the United States Constitution, namely  (1) an injury in fact; (2) a causal connection between

the injury and the conduct complained of; and (3) that the injury will likely be redressed by a

favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560561 (1992).  The FAC

expressly alleges that ***Sgt. Corder*** used a phone at the Leipzig airport, and that the rates for that

call were not adequately disclosed to ***Sgt. Corder***.  [FAC ¶¶ 20; 28.]  The FAC does not allege

that any nondisclosure was made to Mrs. Corder.  In fact, the FAC alleges only that Mrs. Corder

called to complain on her husband's behalf, and that Defendants refused to issue a refund.  [*Id.*

¶ 29.]  Mrs. Corder did not suffer her husband's alleged injury simply because Defendants

refused to refund money in response to a complaint made on his behalf.  *See Aduddle v.*

*Livingston*, 2006 U.S. Dist. LEXIS 74652, No. H-06-3088 (S.D. Tex. Oct. 12, 2006) (wife lacks

Article III standing to complain about actions taken against her husband); *Trepel v. Pontiac*

*Osteopathic Hosp.*, 599 F. Supp. 1484, 1490(D.C. Mich. 1984), *aff'd* 780 F.2d 1023 (6th Cir.

Nov. 25, 1985) (plaintiff physician suffered no new injury when a hospital board of directors

declined to reconsider its initial decision to terminate his employment).

In fact, Plaintiffs admit in the FAC that Mrs. Corder is not a proper plaintiff in this action.

Plaintiffs allege a class comprised of "all military personnel in the United States who, since at

least during the past four years (and potentially earlier, depending on the date determined in

-7-

discovery), made a telephone call from the secured military area of the Leipzig Germany airport from the phone bank operated by BBG or its affiliates and agents." [FAC ¶ 61.] In other words, Mrs. Corder is not even a member of the class that she purports to represent, and the FAC should be dismissed in its entirety as to her for lack of standing.

**B.**   **There Is No Personal Jurisdiction Over Defendants.**

   **1.**   **Standard For Establishing Personal Jurisdiction.**

When a "nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the district court's jurisdiction over the defendant." *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 592 (1999). To exercise personal jurisdiction over a non-resident defendant, a court must conclude that: (1) jurisdiction is authorized under the long-arm statute of the forum state and (2) exercising jurisdiction would comport with Due Process. *Wilson v. Belin*, 20 F.3d 644, 646-47 (5th Cir. 1994). "Because the Texas long-arm statute extends to the limits of federal due process," this Court need only determine whether the exercise of personal jurisdiction over Defendants would be consistent with Due Process. *Id.*

The Due Process Clause requires that the non-resident defendant have "certain minimum contacts with [a forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945). "Minimum contacts with a forum state may arise incident to a federal court's 'general' or 'specific' jurisdiction over a nonresident defendant." *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990). Defendants do not have sufficient contacts with Texas to be subject to either general or specific jurisdiction.

   **2.**   **There Is No General Jurisdiction Over Defendants.**

General jurisdiction exists "[w]here a defendant 'has continuous and systematic general business contacts' with the forum state." *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579,

584 (5th Cir. 2010) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408,

416 (1984)). The "continuous and systematic contacts test is a difficult one to meet, requiring

extensive contacts between a defendant and a forum." *Johnston v. Multidata Sys. Int'l Corp.*,

523 F.3d 602, 609 (5th Cir. 2008). Indeed, a Court cannot exercise general jurisdiction over

corporate defendants that "never made all or even a substantial part of their business decisions in

Texas, did not keep bank accounts in Texas, did not hold directors' meetings in Texas, and did

not maintain their files in Texas." *Wilson v. Belin*, 20 F.3d 644, 650-651 (5th Cir. 1994).

Defendants do not have continuous and systematic contacts with Texas. Rather, Comm

is a Delaware corporation headquartered in San Diego, California and Global is a Swiss

corporation headquartered in Switzerland. [Galicot Decl. ¶¶ 2, 6; Fedier Decl. ¶¶ 3, 5 .]

Defendants do not maintain offices in Texas, own real property in Texas, or maintain any records

in Texas. [Galicot Decl. ¶¶ 2, 6-8; Fedier Decl. ¶¶ 3, 5 .]  Nor do any of Defendants' officers,

directors, or employees reside or work in Texas. [Galicot Decl. ¶¶ 6-8; Fedier Decl. ¶ 3,5.]  The

only Texas contacts that Plaintiffs have alleged are Defendants' respective contracts with Centris,

a Texas company, which are insufficient to give rise to general jurisdiction. *Holt Oil & Fas*

*Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986) ("merely contracting with a resident of the

forum state is insufficient to subject the nonresident to the forum's jurisdiction."); *Moncrief Oil*

*Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007) (same).  Thus, there is no

general jurisdiction.

### 3.   There Is No Specific Jurisdiction Over Defendants.

Specific jurisdiction exists when "the defendant has 'purposefully directed' his activities

at residents of the forum. . . and the litigation results from alleged injuries that arise out of or

relate to those activities." *Clemens v. McNamee*, 615 F.3d 374, 378-79 (5th Cir. 2010).  In other

words, "[s]pecific jurisdiction requires a sufficient nexus between the non-resident's contacts

-9-

with the forum and the cause of action." *Id.* Where, as here, a plaintiff's cause of action against a non-resident defendant sounds in fraud, specific jurisdiction is appropriate when the non-resident defendant's alleged fraud was directed to the plaintiff in Texas. *See Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212-13 (5th Cir. 1999) (specific jurisdiction exists where the letters, faxes, and telephone conversations that "contained the promises, assurances, and representations that [were] at the heart of the lawsuit" were made to the plaintiff in Texas); *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989) (exercising specific jurisdiction over nonresident defendant on fraud cause of action where the misrepresentations were directed at the plaintiff in Texas).

The thrust of Plaintiffs' FAC is that Defendants did not sufficiently disclose rates to Sgt. Corder at a payphone in Leipzig, Germany. The alleged fraud was not, as was the case in *Clemens* and *Wien*, directed at Sgt. Corder while he was in Texas, such that it would be reasonable to bring a claim against Defendants in this forum. If anything, Defendants' activities were directed at Germany.

In an attempt to defeat the personal jurisdiction arguments that Defendants raised in their motion to dismiss Plaintiffs' Complaint, Plaintiffs added Centris, a Texas entity with whom Defendants allegedly have a contract, as a defendant in the FAC. Plaintiffs' addition of Centris cannot save their FAC because their claims—that Defendants did not disclose information to Sgt. Corder in Germany—do not arise out of their alleged contracts with Centris. Despite Plaintiffs' suggestion to the contrary, Centris *does not* (1) program phones in Leipzig, Germany not to accept calling cards, (2) set rates associated with calls from Leipzig, Germany, or (3) determine how to disclose the rates associated with calls from Leipzig, Germany. [Freeman Decl. ¶ 5-7, avanticom Decl. ¶ ii, iv-vi.] Rather, avanticom, a German entity and payphone owner, determines which types of payment are accepted at its phones and dictates how rates are to be

-10-

disclosed—*i.e.*, that a caller is prompted to press "3" to obtain rate information, in accordance with German law. [avanticom Decl. ¶ ii, iv-vi.] avanticom is also responsible for the artwork on its phones. [*Id.*] In other words, Centris is merely a passive alleged contractor that has no role whatsoever in the conduct about which Plaintiffs complain, and the fact that it is in Texas cannot give rise to specific personal jurisdiction over Defendants for disclosures that were made *in Germany*. *See, e.g., Aviles v. Kunkle*, 978 F.2d 201, 205 (5th Cir. 1992) (per curiam) ("plaintiffs' cause of action is not based upon any contract, tort, or recruitment in Texas, but upon the alleged violation of two federal statutes arising solely out of their employment in Ohio. Therefore, specific jurisdiction may not be founded on any of these bases.").[2]

### C.     The Complaint Fails To State A Claim

#### 1.     The German SOFA Agreement Dictates That German Law Applies To Plaintiffs' Claims.

Plaintiff's FAC alleges consistently that Plaintiffs made their calls from a "secure military waiting area at the Leipzig, Germany airport," likely to support an argument that United States law should apply to a United States military area. [FAC ¶ 1. *See also id.* ¶¶ 2, 4, 5, 9, 28, 29, 48, 61.] These allegations, however, dictate exactly the opposite conclusion.

In 1949, the United States, as a party to NATO entered into an Agreement regarding the Status of their Forces (the "**SOFA**"). North Atlantic Treaty, Apr. 4, 1949, 63 Stat. 2241, 34 U.N.T.S. 243. In 1959, the SOFA Agreement was supplemented specifically with regard to American forces in Germany in the "Agreement to Supplement the Agreement between the

---

[2] In fact, Centris was merely implementing Global's and avanticom's requirements. It was not acting on its own behalf. Thus, Plaintiffs should not have brought suit against Centris in the first instance. *See Carolina Steel Corp.*, 983 F.2d 1176 (2d Cir. 1993) (architect not liable to general contract because architect was acting on behalf of Dormitory Authority of the State of New York, not on his own behalf).

Parties to the North Atlantic Treaty regarding the Status of their Forces with respect to Foreign Forces stationed in the Federal Republic of Germany and Protocol of Signature" (the "**German SOFA**"). German SOFA, Aug. 3, 1959, 14 U.S.T. 531, T.I.A.S. 5351. In broad strokes, the German SOFA divides jurisdiction over issues involving United States troops between the "receiving State" (Germany) and the "sending State" (the United States). With regard to services provided to military personnel, the law of the receiving state typically governs. With regard to telecommunications in particular, the German SOFA provides: "Insofar as this Article does not provide otherwise, a force, a civilian component, their members and dependents, *shall use the public telecommunications systems of the Federal Republic*. Subject to other arrangements provided for by administrative agreement, *such use shall be governed by the German regulations in force at the time*." *Id.* at Art. 60 (emphasis added). In other words, a treaty that the United States has approved specifically provides that *German law*, not United States law, let alone Texas law, applies to the conduct at issue in this case. German law requires only that Defendants provide rates when asked, and Plaintiffs specifically allege that Defendants do so. [Holznagel Decl. ¶¶ 1-4; FAC ¶ 6.] Thus, Plaintiffs FAC must be dismissed. *United States v. Pink*, 315 U.S. 203, 230-32 (1942) ("state law must yield when it is inconsistent with, or impairs the policy or provisions of, a treaty or of an international compact or agreement.").

### 2.   The Doctrine Of International Comity Bars Plaintiffs' Claims.

Comity is the "recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation." *Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895). From this principle, and that of sovereignty, it follows "that a State may not impose economic sanctions on violators of its laws with the intent of changing the tortfeasors' lawful conduct in other States." *BMW of North American, Inc. v. Gore* , 517 U.S. 559, 572 (1996). *See also Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 382 (5th Cir. 2002) (noting that to apply American

-12-

law to conduct occurring abroad is a form of "imperialism").  In determining whether to apply the comity doctrine, courts have considered

> (1) the link between the regulating state and the relevant activity; (2) the connection between that state and the person responsible for the relevant activity; (3) the nature of the regulated activity and its importance to the regulating state; (4) the effect of regulation on justified expectations; (5) the significance of regulation to the international system; (6) the extent of other nations' interests; and (7) the likelihood of conflict with other nations' regulations.

*Perforaciones Maritimas Mexics. v. Seacor Holdings*, 443 F. Supp. 2d 825, 833 (S.D.Tex. 2006).

These factors suggest that this Court should dismiss the FAC on comity grounds.  *First*, Texas has no connection to payphones in Germany and the alleged connection between Defendants and Texas is minimal.  *Second*, Plaintiffs seek to use Texas law to regulate the German telecommunications industry, although, (1) as discussed above, the German SOFA dictates that German law governs United States troops' use of telecommunications services in Germany, and (2) it has long been "fully recognized" that it is "the sovereign right of each country to regulate its telecommunications." *International Telecommunications Regulations*, Treaty Doc. 102-13, Melbourne December 9, 1988, entered into force July 1, 1990, for the United States April 6, 1993.  These treaties bar Plaintiffs' state law claims. *Pink*, 315 U.S. at 230-32. *Third*, Plaintiffs allege no facts to suggest that they, let alone a reasonable person, would expect that a phone call made from Germany would be subject to Texas—and not German—law. *Finally*, applying Texas law (at least as Plaintiffs interpret it) would conflict with German law and United States federal law, which only requires a payphone operator to disclose rates on request. 47 C.F.R. § 64.703(a)(3)(i); Holznagel Decl. ¶¶ 1-4.  Plaintiffs do not allege that they requested information about rates but were denied such information; rather, they seek to force Defendants to affirmatively disclose rates, in direct contravention of German and United States law.  Thus, the FAC should be dismissed on comity grounds.

-13-

### 3.    The Presumption Against Extraterritoriality Bars Plaintiffs' Claims.

"It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States. . . . It serves to protect against unintended clashes between our laws and those of other nations which could result in international discord." *Equal Employment Opp. Comm. v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991) (internal citations and quotations omitted). State law, by contrast, cannot apply extraterritorially. *Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324, 333 (1964) (invalidating a state law regulating international sale of alcohol because "the State has sought totally to prevent transactions carried on under the aegis of a law passed by Congress in the exercise of its explicit power under the Constitution to regulate commerce with foreign nations. This New York cannot constitutionally do").

This case is about payphone calls made from the airport in Leipzig, Germany, and the alleged non-disclosure of rates in connection therewith. [FAC ¶¶ 20, 28.] In other words, Plaintiffs seek to complain *in Texas* about disclosures that were made *in Germany*. Texas lacks constitutional power to export its law in this manner and regulate disclosures in Germany, and even if Texas could do so, there is no indication whatsoever that the Texas legislature intended Texas common law to apply to payphones in Germany, or that German authorities would comply.

Plaintiffs have attempted to defeat the presumption against extraterritoriality by adding Centris as a defendant. But Centris cannot save Plaintiffs' FAC for three reasons.

First, Plaintiffs' allegation that Centris has instructed its human operators in Texas not to disclose rates and fees "unless specifically asked" is irrelevant because the FAC does not allege that Sgt. Corder ever spoke to an operator. [FAC ¶ 6.] On the contrary, the thrust of Plaintiffs' FAC is that the payphone itself did not contain a visible notice about rates.

-14-

Second, Plaintiffs' claim that Centris "was responsible for switching, directing, coordinating and creating billing information for all of the telephone calls at issue through Longview, Texas" is irrelevant because the FAC is based on an alleged nondisclosures, not "operational support" services. [FAC ¶¶ 3, 25.] As the court recognized in *Sajfr*, the FAC "is based on alleged nondisclosures at the point of sale, not on connecting or billing a call." *Sajfr*, 2012 U.S. Dist. LEXIS 15198, at *15.[3]

Finally, Plaintiffs' claims that Defendants made decisions about how to disclose rates at the Leipzig Airport in concert with Centris in Texas is irrelevant. [FAC ¶ 6.] As the Ninth Circuit and the California Supreme Court recently recognized in a similar situation involving California law, Texas law cannot apply to conduct that occurred elsewhere merely because a decision regarding that conduct—here, an alleged decision about how to make disclosures in Leipzig—was made in Texas. *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1208 (2011) *adopted in* 662 F.3d 1265 (9th Cir. 2011). More specifically, in *Sullivan*, the California Supreme Court considered whether California law could apply to a California corporation's failure to pay overtime wages to employees outside of California, when the decision to classify those workers as exempt from overtime was made in California. The California Supreme Court rejected the application of California law to work performed outside of California simply because "[t]he decision-making process to classify Instructors as exempt from the requirement to be paid overtime wages . . . occurred primarily from within the headquarters offices of Oracle Corporation located in Redwood Shores, California." 51 Cal. 4th at 1208. The Court explained

---

[3] Plaintiffs also allege that Centris programmed phones at the Leipzig Airport to accept only credit cards and not calling cards. [FAC ¶¶ 8, 35.] This allegation is not only demonstrably false, but irrelevant. Plaintiffs' claims arise out of alleged non-disclosures in connection with a credit card call, not the alleged programming of the phones.

-15-

that "for an employer to adopt an erroneous classification policy is not unlawful in the abstract." *Id.* On the contrary, "[w]hat is unlawful, and what creates liability. . . , is the failure to pay overtime when due." *Id.* Here, too, the decision about how to disclose rates is not unlawful in the abstract. The alleged illegal activity is the failure to disclose rates at the point of sale *in Germany*, and it would violate the presumption against extraterritoriality to apply Texas law to actions on German soil.

### 4.    Texas Law Does Not Apply.

"[T]he conflict-of-law rules to be applied by a federal court in Texas must conform to those prevailing in the Texas state courts." *Day v. Zimmerman, Inc. v. Challoner*, 423 U.S. 3, 4 (1975). "Under Texas law, when presented with a choice of law question, the court must first determine whether there is a conflict between the laws of the jurisdictions whose laws potentially controls, and only when such a conflict is present should the Court conduct a choice of law analysis." *Black v. Toys-R-Us – Delaware, Inc.*, 2010 U.S. Dist. LEXIS 119460, No. 4:08-cv-3315 (S.D. Tex. Nov. 10, 2010).

The phone call at issue here was initiated in Germany, and German law only requires that rate quotes be provided upon request by the consumer. [Holznagel Decl. ¶¶ 1-4.] Plaintiffs admit that Defendants comply with German law because they allege operator agents are instructed to disclose rate information if they are "specifically asked" for it. [*See* FAC ¶ 6.] Plaintiffs, however, contend that this is not enough because *Texas* law requires a disclosure of the amount of the fees that would be charged, regardless of whether the consumer asks for it. [*See, e.g.*, FAC ¶¶ 32, 79.] Assuming *arguendo* that Plaintiffs' interpretation of Texas law is correct, there is a conflict between German and Texas law. Thus, the Court should go on to conduct a choice of law analysis, keeping in mind that this case is an international one. *See* Rest. (Second) of Conflict of Laws § 10 (special factors may be present in international cases).

-16-

Texas courts use the "most significant relationship" test from the *Restatement of Conflict of Laws* to decide which jurisdiction's laws should apply. *Torrington v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000). In other words, Texas courts ask which state has the most significant relationship to the linchpin issues to be resolved, and then they apply that state's or states' law. *Casa Orlando Apartments, Ltd. v. Porkolab*, 624 F.3d 185, 190-91 (5th Cir. 2010). Here, the "linchpin issue" of the Complaint is the alleged failure to disclose rate information, and the Court should consider six factors with regard to Plaintiffs' fraud claim:

> (a) the place where the plaintiff acted in reliance upon the defendant's representations [here, Germany]; (b) the place where the plaintiff received the representations [here, Germany]; (c) the place where the defendant made the representations [here, Germany]; (d) the domicile of the parties [here, Switzerland for Global, California for Comm, and Texas for Plaintiffs]; (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time [here, the payphone in Germany]; and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant [here, assuming there is a contract, providing payment information, which occurred in Germany].

*Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, 355 (Tex.App. [14th] 2003); Rest. (Second) of Conflict of Laws, § 148. Only one of these six contacts—Plaintiffs' domicile—touches Texas. The rest, with the exception of Defendants' residences, touch *only* Germany.[4]

The analysis is similar for the other causes of action alleged in the FAC, and leads to the same conclusion: German law should apply because Germany has the most significant relationship to the conduct alleged in the Complaint. *See Casa Orlando Apartments*, 624 F.3d at 193-94 (citing *Restatement* § 221(2) regarding unjust enrichment factors, explaining most

---

[4] The comments to this section of the *Restatement* further support the conclusion that German law should apply because they explain that the place where the plaintiff acted in reliance should be heavily weighted, and that if at least two contacts are in one state (*e.g.*, plaintiff received representations and acted in reliance upon them in one state), that state's law will usually be the applicable law. *See Tracker Marine, L.P.*, 108 S.W.3d at 349. Here, there are more than two contacts with Germany, including the most important—the site of Sgt. Corder's alleged reliance.

-17-

important factor is where parties' relationship was centered); *see also Restatement* § 188 (court should consider five contacts in applying principles of Section 6 where contract does not contain valid choice of law clause); § 196 (contracts for services governed by law of the state where the services are to be provided).

**5.**     <u>**The Dormant Commerce Clause Bars Plaintiffs' Claims.**</u>

The Commerce Clause grants exclusive authority to the Federal Government to regulate interstate commerce. U.S. Const., Art. I, § 8, cl. 3. Encompassed within this provision is the "dormant" commerce clause, which limits a State's authority to regulate commercial conduct "that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." *Edgar v. MITE Corp.*, 457 U.S. 624, 642-43 (1982). In fact, "a regulation that has the practical effect of controlling commerce that occurs entirely outside of the state in question" is "virtually per se invalid." *Intl. Dairy Foods Assn. v. Boggs*, 622 F.3d 628, 645 (6th Cir. 2010) (quoting *Healy v. The Beer Institute*, 491 U.S. 324, 336 (1989)).

Plaintiffs seek to apply Texas law to commercial conduct in Germany that is legal under German law, namely the disclosures of rates made on payphones at the Leipzig airport. [Holznagel Decl. ¶¶ 1-4.] Faced with an almost identical situation, the U.S. Supreme Court in *BMW of North America v. Gore* precluded Alabama law from applying outside of Alabama. 517 U.S. 559, 571-72 (1996). More specifically, a jury determined that BMW violated an Alabama law requiring it to disclose certain car damage. *Id.* In reviewing a punitive damage award for violation of this statute, the Court held that Alabama could punish BMW for violating Alabama's laws in Alabama, but could not punish BMW for violations outside its borders, where the conduct may have been legal. *Id.* The same applies here: "[Texas] may not impose economic sanctions on violations of its laws with the intent of changing [Global's] lawful conduct in

-18-

[Germany]." *Id.* at 572.[5]

### 6.   To The Extent Plaintiffs Challenge The Rates Charged, Their Claims Are Preempted.

Plaintiffs contend that Defendants breached a contract with them by charging

"unconscionable" rates [*See, e.g.,* FAC ¶¶ 9, 10, 32, 38, 59, 74.]  Plaintiffs also contend that

Defendants charged them "in excess of what they should have been charged."  [FAC ¶ 83.]  In

other words, Plaintiffs claim that the rates they were charged are unreasonable, and ask the Court

to determine what they should have been charged.  Plaintiffs cannot use state law to challenge

the reasonableness of Defendants' rates because the Federal Communications Act ("**FCA**")

preempts all state law claims challenging the reasonableness of rates for telecommunications

services.  *In re Universal Serv. Fund Tel. Billing Practice Lit.*, 619 F.3d 1188 (10th Cir. 2010)

("the uniformity principle embodied in §§ 201 and 202 of the FCA survived detariffing and

preempts state law challenges to the reasonableness of the rates, terms, and conditions of service

provided by telecommunications carriers."); *AT & T Corp. v. Galler Inv., Inc.*, Case No. No.

3:07-CV-1217-L., 2008 BL 170561 (N.D. Tex. Aug. 13, 2008) (no preemption where the claims

"do not implicate any rate, term, or condition of the contract that is subject to federal law").

### 7.   Plaintiffs' Fraud Claim Fails Because Texas Law Does Not Impose A Duty To Disclose Rates For Calls Made At The Leipzig Airport.

The crux of Plaintiffs' fraud claim is that Defendants were silent and failed to disclose the

fees for the use of Global's telecommunication services to Sgt. Corder before he placed his call.

[*See, e.g.,* FAC ¶¶ 37, 80.]  Even if Texas law applied (it does not, as set forth above), Plaintiffs

---

[5] Plaintiffs' allegation that certain conduct occurred in California or Texas does not change this conclusion because Plaintiffs do not allege the nondisclosures occurred in California or Texas. On the contrary, the thrust of Plaintiffs' Complaint is that Defendants failed to disclose rate information at the airport in Leipzig, Germany.

fail to state a claim because deliberate silence is not actionable where, as here, the defendant has

no obligation to speak. *Rio Grande Royalty Company, Inc. v. Energy Transfer Partners, L.P.*,

620 F.3d 465, 468 (5th Cir. 2010); *Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners,*

*Ltd.*, 237 S.W.3d 379, 385 (2007) ("failure to disclose information does not generally constitute

fraud unless there is a duty to disclose the information").

"The duty to disclose may arise (1) when the parties have a confidential or fiduciary

relationship, (2) when one party voluntarily discloses information, which gives rise to a duty to

disclose the whole truth, (3) when one party makes a representation, which gives rise to the duty

to disclose new information that the party is aware makes the earlier representation misleading or

untrue, or (4) when one party makes a partial disclosure and conveys a false impression, which

gives rise to a duty to speak." *Solutioneers*, 237 S.W.3d at 385. Here, Plaintiffs contend

Defendants should have disclosed their fees in advance, but they do not allege that they have a

confidential or fiduciary relationship with Defendants. *See Bay Colony v. Trendmaker, Inc.*, 121

F.3d 998, 1104 (5th Cir. 1997) (silence does not amount to fraud absent confidential or fiduciary

relationship; simply entering into a contract does not create such a relationship); *Southwest E&T*

*Suppliers, Inc. v. Am. Enka Corp.*, 463 F.2d 1165, 1166 (5th Cir. 1972) (buyer and seller do not

qualify as confidants). Neither do they allege that Defendants made any voluntary disclosures

that then gave rise to a duty to disclose rate information; on the contrary, Plaintiffs allege

Defendants said nothing. [*See* FAC ¶ 7, 10.][6] This is fatal to their fraud claim. *See Coach, Inc.*

---

[6] In their FAC, Plaintiffs now claim that Defendants' rates are inconsistent with a rate sheet
posted on Global's website. Plaintiffs, however, allege that the rate sheet "is realistically
unavailable to consumers since BBG Global's name is not disclosed anywhere in the calling or
billing process." [FAC ¶ 32.] In other words, according to the FAC, the rate sheet is the
equivalent of the proverbial tree that falls in the forest with no one there to hear it. Thus, it
cannot give rise to a duty to disclose.

*v. Angela's Boutique*, 2011 U.S. Dist. LEXIS 65876, No. H-10-1108 (S.D. Tex. 2011) (granting

12(b)(6) motion to dismiss fraudulent omission claim because plaintiff failed to allege existence

of duty to disclose); *Bittinger*, 744 F. Supp. 2d at 630 (same).

### 8.    Plaintiffs Have Not Sufficiently Alleged Breach Of Contract.

Plaintiffs allege that Sgt. Corder and Defendants entered into a contract, and that

Defendants breached the implied covenant of good faith and fair dealing by charging Sgt. Corder

an unreasonable rate. This claim fails for several reasons. *First*, to properly plead breach of

contract or breach of the implied covenant, the plaintiff must first plead the existence of a

contract, for which "[a] plaintiff should plead all of the material elements of the contract upon

which he is relying for recovery." *Chuck Wagon Feeding Co., Inc. v. Davis*, 768 S.W.2d 360,

363 (Tex. App. 1989). Plaintiffs merely allege that "Plaintiffs. . . formed a contract with

Defendants." [FAC ¶ 74.] This is insufficient pleading because it does not allege *any* terms of

the alleged contract other than the *implied* covenant of good faith and fair dealing. *See T.O.

Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, (Tex. 1992). *Second*, Plaintiffs

cannot properly state a claim merely by claiming that Defendants breached the alleged "contract"

by allegedly charging Plaintiffs "unconscionable and undisclosed fees." [FAC ¶ 74.] Plaintiffs

would, at the very least, need to "aver facts showing what a reasonable [price]" would be, which

they have not done. *See Adams v. Chadwick*, 140 S.W.2d 524, 527-28 (Tex. App. 1940).

Moreover, any challenge to the reasonableness of the rates charged is preempted by the FCA, as

explained above. *See* Section III(C)(6), *infra*. Thus, Plaintiffs' claim for breach of contract fails.

### 9.    Plaintiffs Have Not Sufficiently Pled Assumpsit/Common Count, And Unjust Enrichment.

Unjust enrichment "is not an independent cause of action," and thus cannot be pled as a

cause of action in a Complaint. *Barnett v. Coppell*, 123 S.W.3d 804, 816-17 (Tex. App. 2003).

-21-

In addition, Plaintiffs have not stated a claim for assumpsit, which requires them to allege that they paid money for Defendants' use and benefit, and that Defendants' use and retention of the benefit without repayment would be against the fundamental principals of justice and equity. *See King v. Tubb*, 551 S.W.2d 436, 442 (Tex. App. 1977). Plaintiffs fail to allege the specific amount of money that Defendants have allegedly wrongfully retained, claiming only that Defendants have retained "excessive revenues and profits." [FAC ¶ 68.] Thus, Defendants are not fairly on notice of Plaintiffs' claim, and Plaintiffs' claims should be dismissed.

### 10.    Plaintiffs' Declaratory Relief Claim Should Be Dismissed As Superfluous.

An action for declaratory relief ordinarily does not lie when the conduct purportedly giving rise to declaratory relief also gives rise to a another, fully matured cause of action that invokes a present remedy at law. *See Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 975 (5th Cir. 2000). The thrust of Plaintiffs' FAC is that Defendants did not adequately disclose rates at a payphone in Germany. If true, Plaintiffs have a fully matured cause of action in fraud that provides an adequate remedy at law. Thus, Plaintiffs' declaratory relief claim must be dismissed.

## IV.    CONCLUSION

For the reasons explained above, Defendants respectfully requests that the Court dismiss Plaintiffs' Complaint.

Respectfully submitted,

_____/s/ Fred R. Puglisi_____
Fred R. Puglisi
California Bar No. 121822
Admitted Pro Hac Vice
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067
Telephone: (310) 228-3700
Facsimile No.: (310) 228-3701

John P. Palmer
State Bar No. 15430600
of
NAMAN, HOWELL, SMITH & LEE, L.L.P.
900 Washington, 7th Floor
P. O. Box 1470
Waco, Texas  76703-1470
(254) 755-4100
FAX (254) 754-6331


ATTORNEYS FOR DEFENDANTS


CERTIFICATE OF SERVICE

    I hereby certify that on the 28th day of February, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  The parties listed below will be notified either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


              ____/s/ Fred R. Puglisi_____
              Fred R. Puglisi