IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| SGT. RICHARD CORDER and DHARMA CORDER, individually and on behalf of all others similarly situated, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 6:11-CV-00264-WSS |
| BBG COMMUNICATIONS, INC.; BBG GLOBAL AG, a limited liability company; CENTRIS INFORMATION SERVICES, LLC; and DOES 1 through 10, inclusive | § § § § § § § | |
| Defendants | § | |

_____

**PLAINTIFFS' OPPOSITION TO DEFENDANT BBG COMMUNICATIONS, INC. AND BBG GLOBAL, AG'S MOTION TO DISMISS**

Plaintiffs submit the following Opposition to Defendants BBG Communications, Inc. and BBG Global AG's motion to dismiss directed at the First Amended Complaint (Dkt. No. 48):

**I.    INTRODUCTION AND SUMMARY OF RELEVANT STANDARDS FOR THIS MOTION**

A responsible company would take notice when a United States Senator tells a United States-based company owned by U.S.-based family trusts to stop engaging in a particular practice directed at United States military troops. Yet calls from U.S. Senator Barbara Boxer to stop the practice of charging our armed forces unconscionable fees for making calls to their family members in the United States from a secured military site before going off to or returning from tours of duties in two war zones, which allegations have been verified by reports from national and international press authorities ranging from, among others, NBC News, *The New York Times*, and *Newsweek* (see Declaration of John Mattes, Exs. 2-9, submitted herewith) have been ignored. Defendants BBG Communications Inc. and BBG Global AG (unless otherwise indicated, collectively "BBG") do not express any concern for this conduct. Instead, in a brazen

1

attempt to avoid responsibility, BBG takes great pains to mislead the Court as to the relevant facts and applicable law.  However, the First Amended Complaint ("Complaint") specifically alleges in detail this scheme was created, designed and effectuated from the United States, and was directed at U.S. soldiers located in part in Texas.  This scheme was specifically targeted at a military stopover location for the purpose of taking money from U.S. troops coming to or from the U.S making a refueling stop in Germany, who were making calls to the United States from a U.S. Department of Defense secured location.  This scheme exclusively used switching facilities located in Texas to effectuate those transactions and operators trained by Centris Information Systems ("Centris"), a Texas-based company.  The actual wrongful conduct in terms of the billing practices at issue and the resulting injury -- the payment for the outrageous bills received -- also takes place in the United States and Texas.

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face."  *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Such factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Katrina Canal*, 495 F.3d at 205 (quoting *Bell Atlantic*, 550 U.S. at 555) (internal quotation marks omitted).  The Court thus accepts well-pleaded facts as true for purposes of this Motion, drawing all inferences from them in the light most favorable to the plaintiff.  *Id*.  In addition, the Court cannot consider arguments for dismissing a Complaint based upon evidence brought in from outside of the operative Complaint or that contradicts a Complaint's allegations unless they are the subject of judicial notice.  To be judicially noticed, "indisputability is a prerequisite."  *Hennessy v. Penril Datacomm Networks*, *Inc*., 69 F.3d 1344, 1354 (7th Cir. 1995).

Despite these well-known requirements, BBG improperly bases their Motion on statements and assumptions contained in Declarations containing  numerous factual averments outside the four corners of the operative Complaint that are not the proper subject of judicial notice, then makes arguments that attempt to negate or ignore the well-pled facts in the operative

2

Complaint by basing their legal defenses on such statements.  *See* Plaintiffs' Objection to Evidentiary Submission, filed herewith.

Even as to the motion to dismiss under Rule 12(b)(2) -- a motion brought by a California company and its overseas alter ego affiliate that admittedly can be sued in any District in the United States -- the only question is their relevant contacts (for which plaintiffs at most need only make a *prima facie* showing).  Plaintiffs believe they can show the Court that several of the statements made in these Declarations are misleading if not false, or provide the Court detailed evidence of Defendants' substantial U.S. connections.  However, due to the improper over-designation of deposition transcripts taken in the referenced *Sajfr v. BBG* action as confidential, which BBG has refused to let counsel use in this case to contradict such statements, Plaintiffs for purposes of this motion cannot presently present all information in their possession to the Court. *See* Plaintiffs' Motion For Leave to Submit Declaration of Alan M. Mansfield and Additional Information Under Seal, submitted herewith and Declaration of Alan M. Mansfield in Opposition to Motion to Dismiss ("Mansfield Decl."), ¶¶ 3, 7.  At a minimum the Court should permit jurisdictional discovery so Plaintiffs can demonstrate to the Court these factual discrepancies.

BBG also makes a convoluted argument about the application of a Status of Forces Agreement with Germany ("SOFA") as justifying this Court telling our military forces their calls are governed by German law or they need to go to Germany to obtain any relief -- which they reasonably could not do, as they could not in reality individually sue overseas for the money BBG owes them.  But this argument assumes the troops in Iraq, such as Sgt. Corder, are NATO forces.  According to NATO, t*hey are not*.  There is no evidence that just because a plane lands at an airfield for a refueling stop where the facility in question is under the jurisdiction of the Department of Defense, not NATO, that all events that occur there are governed by that SOFA -- because by its terms the SOFA applies to troops "stationed" in Germany, not troops passing through to another location.  In fact, the allegations in the Complaint at ¶¶ 2, 20, 29 contradict this conclusion.  The other assertions made by BBG about venue, standing, comity, Commerce

Clause claims, extraterritorial application of law, and the minimal arguments raised by BBG about the claims themselves are equally spurious.

This motion must be denied and Defendants ordered to file an Answer to the Complaint. Alternatively, Plaintiffs should be granted leave to satisfy any concerns the Court may have relating to the Complaint.

## II.    SUMMARY OF FACTUAL ALLEGATIONS OF COMPLAINT

The Complaint alleges a very straightforward claim -- BBG uniformly charges military families outrageous amounts for calls made by U.S. military members to the United States, does not properly disclose those amounts, and charges amounts that are at least six times more that their own prepared documents say should be charged.   Complaint, ¶¶ 4, 32 Ex. 7.   The Complaint specifically alleges when this scheme was adopted and how it was implemented, how the calls in question are from a Department of Defense secured location to the United States, and how the conduct at issue was controlled by BBG and the Galicot family from the United States. Complaint, ¶¶ 35-38, 40-60.   The Complaint also specifically alleges all decisions regarding the company's operations are made by BBG and is dominated by the same family trusts and is part of an alter ego shell game designed to avoid liability for such practices by not revealing who is actually involved.   *Id.*   The Complaint also alleges how every call in question is processed and rated for billing through servers and facilities located in Texas by Centris, a Texas-based company.   Complaint ¶¶ 25, 31, 35, 36, 46, 48.   Moreover, the billing of these calls only references BBG, and calls to challenge claims are to company that at least as represented to be in the United States, and have been billed to residents in Texas.   Complaint, ¶¶ 11, 20, 29-30, Ex. 1-2; Mattes Decl., ¶¶ 8-10.   BBG's argument that the calls in question are "wholly foreign" transactions contradicts not only the allegations of the Complaint, but BBG's own billings.   To obfuscate their identity and responsibility, BBG, working in concert with Centris, also instituted a program to have its representatives use memorized scripts to disguise their identity, not provide rates to avoid losing revenue, refuse to state where they are located, and only provide refunds to consumers who spend significant effort to complain.   Complaint, ¶¶ 6, 37, 46.

### III.   RULE 12(B)(2) IS NOT APPLICABLE SINCE DEFENDANTS' ARGUMENTS THAT THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OR VENUE OVER THESE CLAIMS ARE CONTRADICTED AND IMPROPER FOR A MOTION TO DISMISS

#### A.   The Available Facts Establish Jurisdiction is Proper Over BBG

BBG first asserts a jurisdictional defense that appears to be a motion under Fed. R. Civ. Proc. Rule 12(b)(2), though it never cites the relevant rule upon which BBG bases its motion in its Opening Brief.  BBG also does not state if they are making a facial or factual challenge to jurisdiction.  This is a critical omission, as the Fifth Circuit distinguishes between facial and factual attacks to jurisdiction, with the former not going beyond the allegations of the Complaint. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).  However, even assuming (without conceding) what the relevant standard is that BBG seeks to apply, the burden on Plaintiffs is slight.  *See Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (showing required to assert jurisdiction is "minimal").  If the question whether jurisdiction lies in federal court is to be decided on the basis of facts contained in the parties' Complaint and affidavits, the party who bears the burden need only present a *prima facie* case for personal jurisdiction; proof by a preponderance the evidence is not required, and all doubts are to be resolved in favor of finding jurisdiction. *Wilson v. Belin*, 20 F.3d, 644, 648 (5th Cir. 1994); *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th. Cir. 1982); *International Truck and Engine Corp. v. Quintana*, 259 F.Supp.2d 553, 556 (N.D. Tex. 2003) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)).

Texas' long-arm statute allows courts to exercise personal jurisdiction over the claims at issue.  Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 2012) (a company does business in this State if it "(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state; or (2) commits a tort in whole or in part in this state").  In addition, federal due process "requires only that . . . [the defendant] have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (internal citations omitted).  In undertaking this analysis, the court must examine: 1) the defendant's burden; 2) the forum state's interest; 3) the plaintiff's interest in

convenient and effective relief; 4) the judicial system's interest in efficient resolution of controversies; and 5) the states' shared interest in furthering fundamental social policies. *Irving v. Owens-Corning Fiberglas Corp.*, 864 F.2d 383, 387 (5th Cir. 1989); *Austin v. North American Forest Products*, 656 F.2d 1076 (5th Cir. 1981),

As the Fifth Circuit stated in *Growden v. Ed Bowlin & Associates, Inc.*, 733 F.2d 1149, 1151 (5th Cir. 1984), the Court need only look to see whether there has been some act by which the nonresident defendant "'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws.' The defendant's conduct and connection with the forum state must be such that [it] should reasonably anticipate being hauled into court in the forum state." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). In addition, if a defendant's activities in the forum state are "substantial" or "continuous and systematic," a federal court may exercise jurisdiction as to any cause of action against the defendant, even if it is unrelated to the defendant's activities in the forum state. *Int'l Shoe Co., supra,* 326 U.S. at 318-319.

In addition to the Complaint's allegations about these substantial contacts at ¶¶ 8, 17, 25, 35-36, 46, 48 and 59, numerous facts adduced so far support the *prima facie* determination this Court has jurisdiction over the claims at issue, even though Plaintiffs have not had the benefit of discovery in this case and so far have been stymied from submitting evidence in their possession that buttresses this conclusion. *See* Motion to File Documents Under Seal and Mansfield Decl., ¶¶ 3 and 7, submitted herewith. First, even as to BBG Global AG's relationship with Avanticom (the company that supposedly provides the payphones in question), the parties reasonably expected any claims to be brought in the U.S. *See* Motion To File Declaration Under Seal and Ex. 1. Avanticom representatives have claimed it is actually BBG that is responsible for the credit card billings in question, which effort takes place in the United States interacting with Centris' server in Texas. Mattes Decl., Ex. 6 (Certified translation of article in *Die Welt*, March 17, 2012). There is also *prima facie* evidence that the entire determination of billing takes place in the United States, and the call processing, billing and taking of the monies in question from

the Corders occurred in Texas.  *Id.*, ¶¶  8-10; Mansfield Decl., Ex. 2; Complaint, ¶¶ 29-30, Exs. 1-2.

Specifically as to Texas, both BBG entities purposely availed themselves of the privilege of doing business here.  The Complaint alleges, and BBG does not dispute, that under a contract with defendant Centris, all telephone calls made from the Leipzig DOD-secured military stop-over rest facility were routed through Texas.  BBG thus purposefully availed itself of the privilege of doing business here by seeking out and entering into the agreement with Centris to perform the key provision of the services in question in Texas -- the connection of the call itself, the operation of the services, the operator services that supposedly provide the rates in question, and generation of the relevant materials needed to bill the amounts in question.  *See* Mansfield Decl., Ex. 2; Susan Freeman Decl.  In both BBG entities' agreements with Centris (apparently negotiated here with Bryan Rhys of BBG), the contract is to be performed in Texas.  It also expressly provides that any dispute about such services would be resolved *in Texas*.  *See* Centris Agreement, page 6, § 10.1, Mansfield Decl., Ex. 2.  The applicable choice of law provision also provides for the application of *Texas law*.  *Id.*, page 8, § 22.1.  These facts support a finding of jurisdiction.  *Hanson v. Denckla,* 357 U.S. 235, 253 (1958) ("[S]howing [purposeful availment] typically consists of evidence of the defendant's actions in the forum, *such as executing or performing a contract there*.").  In addition, Centris' CEO, Jamie Maddox, has testified that the training manual referenced at ¶¶ 6 and 37 of the Complaint and used by their employees is maintained in Texas, created with the assistance of BBG.  Apparently Centris and BBG are in constant communication from Texas, accessing materials here on practically a daily basis.  Mansfield Decl., Ex. 2.  This combination of activity shows there is a systematic and continuous connection between BBG and Texas sufficient to find jurisdiction is proper.   *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374-75 (5th Cir. 1987)

In addition to BBG's conduct being targeted at U.S. military personnel, the brunt of the harm -- the charging of the Corders' bank account and collecting outrageous fees from them for a call placed to Texas -- took place when BBG imposed charges on the Corders' bank account in

Texas and took money from them here.  Complaint, ¶¶ 29-30, Exs. 1 and 2.  Thus, there is a direct connection between the wrongful conduct and the Plaintiffs' performance of any obligation to pay for such calls in Texas.  The "brunt" of the harm need not be suffered in the forum state.  If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state.  *Calder v. Jones*, 465 U.S. 783, 790-91 (1984); *X-Tra Light Mfg. P'ship v. Midwest Illumination, Inc*., 2007 U.S. Dist. LEXIS 10513, *9-12 (S.D. Tex. Order dated Feb. 12, 2007).  Defendants have purposefully interjected themselves into Texas, even if the collective charges in question may ultimately be only a percentage of BBG's overall transactions from the DOD facility in Leipzig.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985) (only conducting 0.1% of business in a state sufficient for jurisdictional purposes to assert claims in that state).  BBG stretches credulity to assert they could not reasonably be expected to be hauled into a court in Texas for operations performed pursuant to a contract when they themselves agreed to be bound by Texas law and sued in a Texas forum, and where they billed the outrageous amounts in question in Texas. "Numerous cases have applied the law of a jurisdiction other than the *situs* of the injury where there existed some link between that jurisdiction and the occurrence."  *Id.,* 449 U.S. at 315.

In terms of the five *Irving* due process factors, as BBG does substantial business with Centris in Texas, its burden to defend this litigation here is slight, particularly when compared to the burden BBG desires to place on Sgt. Corder, his wife and other service personnel and their families.  This Court has a clear interest in ensuring United States military troops located in this District and elsewhere are protected from fraudulent practices emanating from here and providing them a forum for resolving their disputes in an efficient manner.  The Plaintiffs' interest in convenient and effective relief cannot be addressed by requiring an Army Sergeant and other personnel who have served their country with distinction to file and pursue individual claims in Germany or Switzerland, and requires this matter be tried here.  The judicial system has a significant interest in the efficient resolution of controversies, and either dismissing this action and telling members of the Armed Forces they cannot resolve their claims here, or

transferring this action to another location to start this process over again, undermines that interest. As to the states' shared interest in furthering fundamental social policies, Germany or Switzerland is realistically not an alternative or suitable forum for Plaintiffs because of its extreme inconvenience and the fact the Class members' injuries in terms of the monies they were forced to expend arose here. Almost all the witnesses and evidence are here, not there.

And most significant, what social policy do we advance by telling our troops that if they are scammed by a United States-based or affiliated company and are overcharged in the United States and Texas for calls they make to here, they have no remedy from the system they have sworn an oath to serve and protect, simply because they made that telephone call to their loved ones in the United States from a Department of Defense military rest stop? Or that to obtain any relief they need to go either to a foreign country they have never visited or stopped in for a few hours, all to recover a few hundred dollars? There is none -- to make such a suggestion shows Defendants' wanton disregard for the military families who are the victims of their practice. *Gorman v. Grand Casino*, 1 F.Supp.2d 656, 658 (E.D. Tex. 1998) ("Second, the State of Texas has a legitimate interest in the outcome of this dispute involving one of its own citizens, one of many enticed to the casino by Defendant's advertising."). Thus, considering the totality of the circumstances and the factors the Court is to consider in making a jurisdictional finding, at a minimum these contacts and factors show there is specific, if not, general jurisdiction over BBG. *Bigelow-Sanford, Inc. v. Gunny Corp*., 649 F.2d 1060, 1063 (5th Cir. 1981).

As an additional factor, the fact the co-defendant Centris is also located in Texas, against whom there are detailed allegations of conspiracy (Complaint, ¶¶ 2-4, 6, 17, 25, 35-39, 46-48), forms an additional basis for asserting jurisdiction in this Court. *Delta Brands Inc. v. Danieli Corp*., 99 Fed. Appx. 1, 6 (5th Cir. 2004) (plaintiff can establish personal jurisdiction over a defendant co-conspirator by alleging (1) that the conspiracy was related to or arose out of the defendant-conspirator's contacts with the forum state; or (2) that the actions of the defendant-conspirator were related to or arose out of the defendant-conspirator's contacts with the forum state). As alleged throughout the Complaint, Centris (based in Texas) claims it was acting at the

9

direction of BBG for the calls and disclosures at issue, and in fact have claimed they acted only at BBG's direction.  Mansfield Decl., ¶¶ 3, 5, Ex. 2.   A court may also assert jurisdiction over a foreign corporation when it affiliates itself with a local entity whose "services are sufficiently important to the foreign corporation" that the corporation itself would perform equivalent services if no agent were available; "whether the general agent was a subsidiary of the principal or independently owned is irrelevant."  *Chan v. Soc'y Expeditions, Inc.,* 39 F.3d 1398, 1405 (9th Cir. 1994).  At BBG's direction, all calls in question, wherever they go, cannot be connected and billed except through operations exclusively in Texas.   Not only is the contact in Texas sufficiently important to BBG, they cannot engage in this conduct without those Texas contacts.

**B.** **If There is Any Question About Jurisdiction the Court Should Order Discovery**

Although the Complaint and the supporting information submitted herewith make out a *prima facie* case for personal jurisdiction, Plaintiffs are not required to rely solely on what they can gather before discovery relevant to the issues raised by this motion can even commence.  "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . the plaintiff's right to conduct jurisdictional discovery should be sustained." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). The Fifth Circuit has typically upheld the dismissal of cases on jurisdictional grounds where there has been no discovery only when the plaintiffs had opportunities to engage in jurisdictional discovery but chose not to do so.  *Singletary v. B.R.X. Inc*. 828 F.2d 1135, 1137-38 (5th Cir. 1987).  Thus, while Plaintiffs believe they have made a sufficient showing to deny Defendants' jurisdictional motions, they alternatively request the Court permit Plaintiffs to conduct limited jurisdictional discovery as to Defendants' contacts with the United States and Texas and their knowledge of the facts set forth above.  *Womack v. Nissan North Am., Inc*., 2007 U.S. Dist. LEXIS 101633, *6-9 (E.D. Tex., Order dated October 12, 2007) (finding plaintiff had suggested "with reasonable particularity" the possible existence of the requisite contacts and permitting limited jurisdictional discovery).

Many of the statements made in the Declarations submitted by BBG are of witnesses who have been deposed by Plaintiffs' counsel, but BBG improperly designated all their testimony as confidential.  Thus, that testimony cannot be submitted to this Court at this time absent Court permission, even though Plaintiffs' counsel have access to it, because Defendants' counsel have resisted all attempts to present that evidence to the Court.  Mansfield Decl. at _-.  By way of example, BBG submits the Declaration of Susan Freeman from Centris.  What it does not submit is the testimony from Centris' CEO, Jamie Maddox, that contradicts several of her statements and indicates Ms. Freeman may not be the person most qualified to make such statements. Mansfield Decl., Ex. 2.  BBG also has not put up Mr. Galicot for deposition, even though he is likely the person most qualified to address the issues about BBG's contacts and has submitted several Declarations to courts on these issues.  *Id.*  Several of Ms. Fedier's assertions in her Declaration, particularly regarding BBG's pricing charts, her "daily work" for BBG Global AG (or even if she understands the Declaration prepared for her, since she claims her primary language is Spanish), or events that took place before she was an employee of BG Global AG, do not comport with her sworn testimony and other statements made by Avanticom, which Plaintiffs have provided or can provide to the Court.  *Id.*  BBG Global AG's operations are admittedly intertwined with BBG Communications, Inc., is an admitted affiliate, and is owned by the same family trusts that own BBG Communications, Inc. such that it is engaging in conduct here either directly or through the acts of its affiliated company.  Complaint, ¶¶ 40-60;  Mansfield Decl., Exs. 2-5.  The Court should thus permit discovery on Defendants' factual representations in the Declarations they submitted, and permit Plaintiffs to submit testimony already in their possession on such matters, in order to establish a fair and balanced factual record.  This right is self-evident on the basis of fairness where, as here, the discovery is of information that is within Defendants' exclusive control.  *See El-Fadl v. Central Bank of Jordan,* 75 F.3d 668, 676 (D.C. Cir. 1996), abrogated on other grounds in *Samantar v. Yousuf,* 130 S. Ct. 2278 (2010) ("A plaintiff . . . is entitled to reasonable discovery lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum.").

11

### C.      BBG's Venue Argument Does Not Withstand Scrutiny

As to BBG's Motion under Rule 12(b)(3) to dismiss or transfer the action for improper venue, Centris -- a Texas company -- has not asserted any claim of improper venue in its Motion to Dismiss (Dkt. No. 52).  By not doing so, it has consented to the action being prosecuted in this District pursuant to Fed. R. Civ. Proc. 12(h).  This makes sense since it cannot assert that jurisdiction is not proper over it in Texas and thus it can be properly sued in this District pursuant to 28 U.S.C. § 1391(c).  BBG Global AG can be sued in any District pursuant to 28 U.S.C. § 1391(d).  In addition, under the federal venue statute, a corporation "is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  *Id.*§ 1392(c).  Since as stated above this Court has jurisdiction over all defendants here, venue is proper here as well.  The Complaint at ¶¶ 11, 20, 29-30, Exs. 1 and 2, alleges BBG billed the Corders the amounts at issue here and debited their bank account located here.  *See* Mattes Decl., ¶¶ 8-10.  Thus, BBG took the money in question from here and BBG's liability in part arose from acts and transactions that took place here.  That is enough to satisfy any remaining question about venue.  "Because large corporations . . . often have sufficient contacts to satisfy the requirement of § 1391 (c) for most, if not all, federal venues, the general venue statute 'has the effect of nearly eliminating venue restrictions in suits against corporations.'" *In re Volkswagen of America, Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) (quoting  14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3802 (3d ed. 2007)).  And absent a specific mandate to the contrary, any amendments of the diversity or venue statutes referenced by BBG only apply prospectively.  *Cf., Werner v. KPMG LLP*, 415 F.Supp.2d 688 (S.D. Tex. 2006) (amendments to CAFA only apply to cases filed after enactment).

### IV.    BBG's Other Procedural Defenses Do Not Justify Granting a Motion to Dismiss

### A.      Both Plaintiffs Have Article III Standing to Assert These Claims

While conceding Sgt. Corder can assert the claims here at issue, BBG asserts Mrs. Corder does not have standing to also bring the claims in question.  Both Plaintiffs suffered injury in fact at the hands of BBG, both being charged $43.00 for a four-second phone call and having money

taken from their joint checking account.  While BBG suggests Sgt. Corder is the only one who should have complained, and there was nothing they could do, he was in Iraq in a war zone at the time.  Complaint, ¶ 29.  If the bill had not been paid, it would have been Ms. Corder's responsibility as much as it would be Sgt. Corder's.  While the fact BBG and Centris instructed representatives not to divulge any rate information is a part of this claim (Complaint, ¶¶ 6, 37, 46), it is not just a question of misrepresentation.  It also involves *both of them* as a military family an amount for a 4-second telephone call virtually everyone recognizes is unconscionable.

To establish Article III standing, "First, the plaintiff must show that it has suffered an injury in fact--a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical.  Second, the plaintiff must establish causation-a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant.  Lastly, there must be redressability--a likelihood that the requested relief will redress the alleged injury."  *Sierra Club v. Peterson*, 185 F.3d 349, 360 (5th Cir. 1999).  On a motion to dismiss, plaintiffs must simply allege sufficient facts that give rise to a plausible claim of standing.  *Cornerstone Christian Schools v. Univ. Interscholastic League*, 563 F.3d 127, 133-34 (5th Cir. 2009).  Additionally, the Court should construe the complaint in favor of the complaining party in resolving the issue of standing.  *Rohm & Hass Tex., Inc. v. Ortiz Bros. Insulation, Inc.*, 32 F.3d 205, 207 (5th Cir. 1994).  Plaintiffs allege they both suffered concrete, actual harm because they were jointly responsible for paying such amounts, that such charges directly caused them both harm as they paid such amounts out of their joint account, and that the relief sought in terms of refunds would redress such conduct, and the significant effort Ms. Corder expended attempting to resolve this issue, without success and receiving the run around from BBG.  Complaint, ¶¶ 11, 20, 29, 30, 38.  Payment of money and expenditure of time and resources by a plaintiff as a result of wrongful acts of a defendant, even if not the direct target of the conduct or party to the contract, has been held sufficient to allege injury in fact for Article III purposes.  *Geoservices, Inc. v. Baradat-Liro*, 2008 U.S. Dist. LEXIS 25628, *6-8 (S.D. Tex., Mar. 29, 2008).  If necessary the Complaint can be amended to add further allegations relating to

13

Ms. Corder and modify the class definition to make clear it includes all members of the military family who were responsible for, or paid, the charges in question.  Mattes Decl., ¶¶ 8, 10.

### B. Plaintiffs' Claims are Not Barred by the Presumption Against Extraterritoriality.

Even assuming that the conduct alleged by Plaintiffs occurred overseas, which is not the case as described herein and in the Complaint, BBG's argument that Plaintiffs' claims should be barred by the presumption against extraterritoriality because Plaintiffs have asked the Court to apply Texas law extraterritorially to conduct occurring beyond the borders of the United States is misplaced.  "Numerous cases have applied the law of a jurisdiction other than the situs of the injury where there existed some other link between that jurisdiction and the occurrence." *Allstate Ins. Co v. Hague,* 449 U.S. 302, 315 (1981).  Moreover, it is well-established that courts may apply various laws and statutes to conduct that has occurred beyond the borders of the United States.  *See, e.g.*, *H.K. & Shanghai Banking Corp. v. Simon* (*in Re Simon*), 153 F.3d 991, 996 (9th Cir. 1998) (a court may apply a law to conduct occurring outside the United States where "the regulated conduct is intended to, and results in, substantial effects within the United States") (internal quotations omitted); *Environmental Defense Fund v. Massey*, 986 F.2d 528, 531 (D.D.C. 1993) (a court may apply a law to conduct occurring outside the United States "where the failure to extend the scope of the statute to a foreign setting will result in adverse effects within the United States").

In *Sajfr v. BBG*, 2011 U.S. Dist. LEXIS 26407, *8-9 (S.D. Cal. Mar. 15, 2011), the Court held that where the allegations of the Complaint indicates at least some of the conduct at issue may have taken place in the United States, it was inappropriate to determine as a matter of law that German law applied to the transactions**:** "Furthermore, the Court declines to conclude at the present that German or Mexican law should apply to this case because some of the conduct may have occurred in California  through BBG Communications.  Furthermore, it is undisputed that Plaintiffs are residents of California and California has an interest in protecting its own citizens.

The Court concludes that choice of law does not mandate dismissal of the complaint at this time. [citation]".  The same conclusion should apply here based on the facts alleged in the Complaint.

### C.   The Doctrine of International Comity Does Not Mandate Dismissal of Plaintiffs' Claims.

BBG's argument that principles of comity mandate dismissal of Plaintiffs' complaint is similarly flawed.  "Comity is 'the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience.'"  *Dependable Highway Express, Inc. v. Navigators Ins. Co*., 498 F.3d 1059, 1067 (9th Cir. 2007) (quoting *Hilton v. Gilot*, 159 U.S. 113, 164 (1895)).  Extension of comity is not "a matter of absolute obligation."  *Id*.  Here, as stated in Plaintiffs' Complaint, Plaintiffs and Centris are residents of Texas (Complaint, ¶¶ 20, 25), BBG is incorporated in and headquartered in or controlled from California (Complaint, ¶¶ 21-22), and the conduct at issue primarily arose from the United States and in Texas (Complaint, ¶¶ 2-17, 31-37, 40-60).  Principles of comity do not apply in this case and Texas is the proper state to litigate this action.

### D.   The Citation to a German SOFA is Irrelevant as Sgt. Corder and Other U.S. Troops in Iraq are Not NATO Forces Nor are the Troops Stationed in Germany

While BBG tries to escape liability for its conduct by asserting a NATO SOFA agreement as governing the presence of U.S. troops passing through Leipzig on a re-fueling stop to Iraq (as did Sgt. Corder), they miss a fundamental fact.  According to NATO's official website (www.nato.int/cps/en/natolive/topics-51978.htm): "It [NATO] did not have a direct role in the international stabilization force that was in Iraq from May 2003 until 31 December 2011 (the US-led combat mission "Operation Iraqi Freedom" was succeeded by "Operation New Dawn" in September 2010)."   Thus, United States troops going to Iraq who used payphones in the Department of Defense lounge in Leipzig were not there pursuant to a NATO mission.  Whether the SOFA, designed primarily to address jurisdictional issues for military personnel who commit crimes in a foreign state, requires the application of German law is at most a factual dispute, since according to NATO it does not apply to the U.S. troops in question.

Moreover, attached as Ex. 1 to the Mansfield Decl. is a true and correct copy of the relevant pages of the applicable German SOFA.  By its express terms, it applies only to troops *stationed there.  See* NATO SOFA Supplementary Agreement at Preamble, at 3-4 ("Upon the signature of the Agreement to supplement the Agreement between the Parties to the North Atlantic Treaty regarding the Status of their Forces with respect to Foreign Forces *stationed* in the Federal Republic of Germany (hereinafter referred to as the 'Supplementary Agreement...' and '**CONSIDERING** that, pursuant to that provision, the new arrangements shall be based on the Agreement between the Parties to the North Atlantic Treaty regarding the Status of their Forces, signed at London on 19 June 1951, supplemented by such provisions as are necessary in view of the special conditions existing in regard to the forces *stationed* in the Federal Republic of Germany...)'" (emphasis added).  Indeed, looking at the entirety of Article 60 of the SOFA, its clear intent relates to the establishment of telecommunications facilities by a stationary force or use of such systems by their family members.  See Mansfield Decl., Ex. 1.  Thus it is not a surprise BBG fails to cite a single decision supporting its assertion that the SOFA provides for the application of German authority under these facts.  The Complaint at ¶¶ 2, 4, 8, 28-29, 33-34 specifically alleges these troops are not stationed in Germany -- they are troops that are there for only a couple of hours on a re-fueling stop, in a Department of Defense secured facility, where the Department of Defense controls who has access to that lounge area.

### E.    Defendants' Dormant Commerce Clause Argument Fails as Well

"Not every exercise of state power with some impact on interstate commerce is invalid." *Edgar v. MITE Corp.*, 457 U.S. 624, 640 (1982).  State economic regulation that operates evenhandedly, advances legitimate state interests, and has only an indirect or incidental effect on interstate commerce is constitutionally permissible "'unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'"  *Id*., quoting *Pike v. Bruce Church, Inc.* 397 U.S. 137, 142 (1970).  Only state regulation that directly regulates or discriminates against interstate commerce is strictly prohibited.  *Brown-Forman Distillers Corp. v. New York State Liquor Authority*, 476 U.S. 573, 579 (1986).  The party making the

constitutional challenge has the burden of demonstrating the impact of the state regulation on interstate or foreign commerce.  See *Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979).  BBG fails to satisfy its burden to make such a showing that there is any discriminatory impact here.

 "[T]he Commerce Clause protects against inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State."  *Healy v. Beer Inst.*, *Inc*., 491 U.S. 324, 336-337 (1989).  BBG does not specify which laws are subject to the dormant Commerce Clause, or how they discriminate.  Indeed, BBG does not and cannot argue that Texas law discriminates in any way, because Texas has an interest in regulating businesses that operate within its borders or prey upon its residents, as is the case here.  The cases BBG cites are inapposite because, unlike here, they concern conduct that occurred wholly outside the borders of the regulating state.  *Id.*, 491 U.S. at 326 (law required "out-of-state shippers of beer to affirm . . . posted prices for products" were the same as prices for in-state products); *Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 62 (1st Cir. 1999) *aff'd sub nom. Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) (addressing only whether the "market participant" exception to the dormant commerce clause applies to the foreign commerce clause); *Experience Hendrix, L.L.C. v. HendrixLicensing.com, LTD*, 766 F.Supp.2d 1122, 1133 (W.D. Wash. 2011) (holding that choice-of-law directive in Washington statute imposing Washington law without regard for choice-of-law principles violate dormant commerce clause).  Thus, the dormant Commerce Clause does not apply to bar Plaintiffs from seeking relief on behalf of themselves and other similarly situated military service families.

F. **The Claims are Not Preempted under the Terms of the Federal Communications Act**.

BBG next contends that the claims asserted in the Complaint are barred under provisions of the Federal Communications Act, 47 U.S.C. § 201, *et seq*. ("FCA"), although they fail to cite any relevant provisions of the FCA or explain whether they are asserting express, implied, conflict or field preemption.  This is a critical omission, since courts "begin our consideration of preemption questions with the presumption that historic police powers of the states are not

superseded by federal law." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).  BBG provides no explanation how such claims are subject to either conflict or implied preemption. The only relevant question is whether they are subject to express or complete preemption**.**  Since BBG fails to provide even this most basic preemption analysis, this defense must fail on its face**.**

However, even if the Court decides to review the merits of this defense, it fails on numerous substantive grounds.  First, if that is their defense, Plaintiffs must be given leave to add a claim under the FCA, which prohibits charging unreasonable rates and gives Plaintiffs the right to assert such claims in federal court.  47 U.S.C. §§ 206 and 207.

Second, BBG's argument ignores that rates were "de-tariffed" in 2001.  *In Re USF Tel. Billing Practices Lit*, 619 F.3d 1188, 1193 (10th Cir. 2010) ("Following a comment period, the FCC issued a series of detariffing orders, effective August 1, 2001, in which it forbore from enforcing § 203 against long-distance carriers.")  When Congress did so, it permitted consumers to bring direct actions for redress under state law as there were no longer any "filed rates" and the FCC no longer sets or approves rates.  Indeed, while it is within the non-exclusive authority of the FCC to determine if a rate is unreasonable, it is not within the province of the FCC to preempt any claims relating to rates, particularly directed at military personnel.

Third, the claims at issue cannot be expressly preempted, because BBG fails to disclose to this Court the savings clause in the FCA, 47 U.S.C. § 414, which provides: "Nothing in this Act shall in any way abridge or alter the remedies now existing at common law or by statute, *but the provisions of this Act are in addition to such remedies*."   In light of this savings clause, courts have held the FCA cannot be construed to completely preempt all state law claims as set forth herein as they are not expressly preempted and the savings clause defines the boundaries of preemption.  Because the FCA does not completely preempt traditional state common law, the mere fact that FCA also governs certain aspects of long distance carrier's billing relationships with its customers does not mean that asserted state claims against carrier actually arose under FCA, particularly in absence of express manifestation from Congress that it intended complete preemption to bar such claims.  *Marcus v AT&T Corp.*, 138 F.3d 46, 53-54 (2nd. Cir. 1998);

*Fisher v. NOS Communs. (In re NOS Communs.*), 495 F.3d 1052,1058 (9th Cir. 2007) ("A savings clause is fundamentally incompatible with complete field preemption; if Congress intended to preempt the entire field of telecommunications regulation, there would be nothing for section 414 to "save," and the provision would be mere surplusage."), Cf., *KVHP TV Partners v. Channel 12, Inc*., 874 F.Supp. 756, 761-62 (E.D. Tex. 1995) (finding complete preemption doctrine under FCA was not followed in Fifth Circuit and did not apply to justify removing claims alleging breach of contract and remanding action to state court).  Complete preemption cannot form the basis for granting BBG's motion to dismiss.

Fourth, *In Re USF Tel. Billing Practices Lit*, *supra*, 619 F.3d at 1196, the primary decision relied upon by BBG, is based solely on the complete preemption doctrine.  The fact that it ignored that express savings clause and the holdings in both *Marcus* and *NOS Communications* explaining how that clause contradicts any complete preemption analysis, and is a doctrine that as noted in *KVHP TV* has not been followed in the Fifth Circuit, cannot properly bar such claims. In fact, however, that decision actually supports Plaintiffs' claims as it did not find all the state law claims preempted.  Certain arbitration clauses that are not relevant here were found to be preempted under the FCA.  However, Plaintiffs' consumer breach of contract claims were allowed to proceed to trial, where Plaintiff prevailed.  On appeal, defendant argued such claims were preempted, and the Tenth Circuit *upheld such claims*, expressly holding "[t]he FCC's detariffing orders, however, explicitly contemplate a role for state law in the deregulated long-distance market.  *See Order on Reconsideration*, 12 FCC Rcd. 15014, at P 77 ("[*C]onsumers may have remedies under state consumer protection and contract laws as to issues regarding the legal relationship between the carrier and customer in a detariffed regime*."  Accordingly, because state law expressly supplements federal law in the regulation of interstate telecommunications carriers, field preemption does not apply.") (Emphasis added.)  Such claims are not preempted by the FCA.

**G.     BBG's Attack on the Claims Asserted in the Complaint Must Be Denied**

In attempting to convince this Court not to address the merits of these claims (and provide no remedy for the military families they took money from), BBG actually devotes only three pages of their 22-page motion addressing the claims at issue.  For the reasons set forth below, their defenses to these claims are as flawed as their other attempts to avoid liability.

First, in Texas a claim for breach of contract has four elements:1) the existence of a valid contract; 2) the contract's performance by Plaintiff; 3) breach by the Defendant; and 4) Plaintiff damages resulting from that breach.  *Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007).  As far as the contract claim is concerned, while Defendants assert that Plaintiffs need to allege what a reasonable price would be, ¶¶ 4, 32, 59 and Ex. 7 of the Complaint says, at most, such charges should be what BBG Global AG states -- and six times less than what was actually charged.  Plaintiffs properly allege the elements of such a claim.  Complaint, ¶¶ 74-76.

Second, under Texas law, the elements of a fraud claim are: (1) a material representation or omission of a material fact; (2) that was false when made; (3) the speaker either knew the representation was false or asserted it without knowledge of its truth; (4) the speaker intended that it be acted upon; (5) the party acted in reliance; and (6) the party was injured as a result.  *Malacara v. Garber*, 353 F.3d 393, 403-04 (5th Cir. 2003) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 322 (5th Cir. 2002); *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010).   "A plaintiff establishes reliance by showing the defendant's acts and representations induced him to either act or refrain from acting, to his detriment."  *Worldwide Asset Purchasing, L.L.C. v. Rent-A Ctr. East, Inc.*, 290 S.W.3d 554, 566 (Tex. App. 2009).  To prove fraud by nondisclosure, a plaintiff must show that a person with a duty to disclose deliberately failed to disclose material facts. *See 7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 507 n. 27 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). When a defendant has a duty to speak but remains silent, his silence is tantamount to a false representation.  *American Tobacco Company, Inc. v. Grinnell*, 951 S.W.2d 420, 436 (Tex. 1997).  A fraud by omission of a material fact may

occur: (1) when a defendant conceals or fails to disclose a material fact within his knowledge; (2) the defendant knows the plaintiff is ignorant of the fact and does not have an equal opportunity to discover the truth; (3) the defendant intends to induce the plaintiff to take some action by concealing or failing to disclose the fact; and (4) the plaintiff suffers injury as a result of acting without knowledge of the undisclosed fact. *Bradford v.* Vento, 48 S.W.3d 749, 755 (Tex. 2001). The Complaint at ¶¶ 78-81 contains the requisite allegations to assert such a claim.

Third, a party may recover under an unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage. *Southwestern Bell Tel. Co. v. Mktg. on Hold Inc.,* 308 S.W.3d 909 (Texas 2010). Unjust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits. *Vigo v. Reed*, 2011 U.S. Dist. LEXIS 145233, *8 (N.D. Texas, Dec. 16, 2011). Unjust enrichment occurs when the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain. *Id.* A claim for unjust enrichment may be pled in the alternative as an implied-contract theory that allows recovery when one person unfairly obtains a benefit from another and it is unclear whether a valid contract existed between the parties. *Southwest Agri-Plastices, Inc. v. Hog Slat, Inc.*, 2010 U.S. Dist. LEXIS 17322, **15-17 (N.D. Texas, February 26, 2010). As all the elements of this claim have been properly plead (Complaint at ¶¶ 83-86), it must also be upheld.

BBG finally argues that Plaintiffs fail to properly state a claim for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* ("DJA") because Plaintiffs do not allege the existence of a contract or the existence of the legal rights and duties of the parties. Determining whether to maintain a declaratory judgment claim requires an analysis of: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action. *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 387 (5th Cir. 2003). However, "The sole requirement for a district court to have subject matter jurisdiction over a claim brought pursuant to the DJA is an 'actual controversy.'" *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.,* 482

F.3d 1330, 1338 (Fed. Cir. 1997).  An "actual controversy" within the meaning of the DJA is the same as an Article III case or controversy.  *Id*.  Therefore, a party bringing a declaratory judgment claim is only required to show that under "all the circumstances," there is an actual or imminent injury that was caused by the opposing party, is redressable by judicial action, and is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. As the Complaint at ¶¶ 88-91 contains such allegations, this claim should be permitted to proceed.

## V.    LEAVE TO AMEND SHOULD BE GRANTED IF NECESSARY

Finally, if the Court grants BBG's Motion in any respect, Plaintiffs request leave to amend to cure any alleged identified deficiencies.  Unless it is clear the Complaint could not be saved by any type of amendment -- and since the primary basis for Defendants' assertions to the contrary are improperly submitted Declarations that attempt to contradict the allegations of the Complaint -- dismissal without leave to amend is not appropriate.  Fed. R. Civ. Proc. 15(a)(2) ("The court should freely give leave when justice so requires").  The Fifth Circuit has stated this Rule "evinces a bias in favor of granting leave to amend", particularly where there can be no showing of futility, delay, bad faith, dilatory motive, repeated failure to cure deficiencies when amendments were previously amended, or prejudice.  "Thus, unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 597-99 (5th Cir. 1981).  This is particularly the case here as additional facts have been disclosed since the Complaint was filed, no pre-trial dates have been set, this Court has not previously be asked to rule on the sufficiency of the Complaint, and where the Complaint can be amended to add additional factual allegations.

## VI.    CONCLUSION

Defendants' motion to dismiss should be denied, or Plaintiffs given leave to amend their Complaint or to conduct jurisdictional discovery.

DATED: March 22, 2012                    Respectfully submitted,

                                         DUNNAM & DUNNAM, L.L.P.
                                         By: ____S/Vance Dunnam_____
                                         Vance Dunnam (Texas Bar No. 06258000)

Jim Dunnam (Texas Bar No. 06258010 )
4125 West Waco Drive
P.O. Box 8418
Waco, TX 76714-8418
Phone: (254) 753-6437
Fax: (254) 753-7434

THE CONSUMER LAW GROUP
By: _____S/Alan M. Mansfield_____
Alan M. Mansfield (CA SBN 125998)
(Admitted *Pro Hac Vice*)
alan@clgca.com
10200 Willow Creek Rd., Suite 160
San Diego, CA 92131
Tel: (619) 308-5034
Fax: (888) 341-5048

EMERSON POYNTER LLP
John G. Emerson (Texas Bar No. 06602600)
jemerson@emersonpoynter.com
830 Apollo Lane
Houston, TX 77058-2610
Tel: (281) 488-8854
Fax: (281) 488-8867

Scott E. Poynter (Admitted *Pro Hac Vice*)
scott@emersonpoynter.com
Chris D. Jennings (Admitted *Pro Hac Vice*)
cjennings@emersonpoynter.com
William T. Crowder (Admitted *Pro Hac Vice*)
wcrowder@emersonpoynter.com
Corey D. McGaha (Texas Bar No. 24058992)
cmcgaha@emersonpoynter.com
500 President Clinton Ave., Ste. 305
Little Rock, AR 72201
Tel: (501) 907-2555
Fax: (501) 907-2556

WHATLEY DRAKE & KALLAS, LLC
Joe R. Whatley, Jr., Esq. (Admitted *Pro Hac Vice*)
Edith M. Kallas, Esq. (Admitted *Pro Hac Vice*)
380 Madison Avenue, 23rd Floor
New York, NY 10017
Tel: (212) 447-7070
Fax: (212) 447-7077

John Mattes, Esq. (Fla. SBN 0468150)
(Admitted *Pro Hac Vice*)
investigativeguy@gmail.com
1666 Garnet Avenue, #815
San Diego, CA 92109
Tel: (858) 412-6081

Attorneys for Plaintiffs

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 22nd day of March, 2012, a true and correct copy of the foregoing pleading was forwarded via transmission of Notices of Electronic Filing generated by CM/ECF, or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing, to the parties listed below.


S/Alan M. Mansfield
Alan M. Mansfield
(Admitted *Pro Hac Vice*)


NAMAN, HOWELL, SMITH & LEE, LLP
John P. Palmer (SBN: 15430600)
900 Washington, 7th Floor
P. O. Box 1470
Waco, TX 76703-1470
Tel: (254) 755-4100
Fax: (254) 754-6331

Attorneys for Defendants BBG
COMMUNICATIONS, INC. and BBG
GLOBAL AG

SHEPPARD MULLIN RICHTER &
HAMPTON LLP
Fred R. Puglisi (Admitted *Pro Hac Vice*)
Valerie E. Alter (Admitted *Pro Hac Vice*)
Elizabeth S. Berman (Admitted *Pro Hac Vice*)
Jay T. Ramsey (Admitted *Pro Hac Vice*)
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Tel: (310) 228-3700
Fax: (310) 228-3701

Attorneys for Defendants BBG
COMMUNICATIONS, INC. and BBG
GLOBAL AG


HARBOUR, SMITH HARRIS & MERRITT
Edward L. Merritt (Texas Bar No. 13967400)
P. O. Drawer 2072
Longview, TX 75606
Tel: (903) 757-4001
Fax: (903) 757-5123

Attorneys for Defendant CENTRIS
INFORMATION SERVICES, LLC