IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS,
WACO DIVISION

| | | |
|---|---|---|
| RICHARD CORDER et al.,<br>    Plaintiffs, | § <br> § <br> § | |
| v. | § <br> § | CIVIL ACTION NO. W-11-CA-00264 |
| BBG COMMUNICATIONS, INC. et al.,<br>    Defendants. | § <br> § | |

## ORDER

Before the Court is the Motion to Dismiss filed by the Defendants, BBG Communications, Inc. and BBG Global, AG. Having considered the motion, the response, the reply, and the applicable legal authority, the Court finds that it lacks personal jurisdiction over both companies and dismisses the claims against them.

I.    **Factual and Procedural History**

This case is about a costly phone call placed at the airport in Leipzig, Germany. The Leipzig airport is used as a technical stop for refueling planes transporting troops to and from Afghanistan and Iraq. One of those troops was the Plaintiff, U.S. Army Sergeant Richard Corder. While his plane was refueling, Corder used a pay phone in a secured military lounge to call his wife, Dharma. Corder paid for the call with his VISA debit card but never inquired about its cost. His wife did not answer, so Corder left a four-second voice mail. He was later billed $41.14 for the call.

Outraged at the cost, Corder and his wife filed this class-action lawsuit against BBG Communications, BBG Global, and Centris Information Services, L.L.C. (Centris). As their names suggest, BBG Communications and BBG Global are affiliated companies that provide telecommunications services; Centris supplies operator services for both companies.

1

Corder claims that the Defendants are liable for breach of contract, fraud, and unjust enrichment (or assumpsit). Each of his claims is based on the alleged non-disclosure of the rate for the phone call. Corder alleges that he would not have placed the call had he been informed of its cost. In addition, he claims that the Defendants conspired to rig the phone bank, not provide rate information unless directly asked, and program the phones so that accessing the rate information would be difficult. Corder seeks compensatory and exemplary damages, as well as declaratory relief.[1]

BBG Communications and BBG Global now move to dismiss, arguing, inter alia, that this Court cannot exercise personal jurisdiction over them. BBG Communications is a Delaware corporation with its principal place of business in San Diego, California. BBG Global is a Swiss corporation with its principal place of business in Barr, Switzerland. Neither company has offices, employees, or real property in Texas. In fact, outside of this litigation, their only apparent connection with Texas is their contracts with Network Operator Services, Inc. (NOS), which is based in Longview, Texas.

## II.    Rule 12(b)(2) Standard

A motion to dismiss for lack of personal jurisdiction challenges the court's authority to exercise judicial power over the defendant. The plaintiff bears the burden of establishing that the court has personal jurisdiction, but the burden is not a heavy one. *See Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir.

---

[1] Throughout his pleadings, motions, and other filings, Corder repeatedly and needlessly emphasizes that the plaintiffs are members of the military and demonizes the Defendants' owners, referring to their mansions and lack of military service. *See* First Am. Class Action Compl. ¶¶ 9, 13, 38, Jan. 31, 2012, ECF No. 40. These statements are improper. Federal judges have an obligation to "administer justice without respect to persons, and do equal right to the poor and to the rich" alike. 28 U.S.C. § 453 (2006). Although servicemen such as Corder are certainly entitled to the gratitude and admiration of their fellow citizens, they are not entitled to a favored status in the courts. The blatant emotional appeals are improper and, frankly, insulting.

2008). When, as here, the court does not conduct an evidentiary hearing, the plaintiff need only make a prima facie case of jurisdiction. *Id.* Proof by a preponderance of the evidence is not required. [2] *Id.*

Although the court initially assumes the veracity of the plaintiff's jurisdictional allegations, it is not restricted to the pleadings when deciding whether it can exercise personal jurisdiction. *Id.*; *Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753 (5th Cir. 1996). "When the defendant disputes the factual basis for jurisdiction, ... the court may receive interrogatories, depositions, or 'any combination of the recognized methods of discovery' to help it resolve the ... issue." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008) (quoting *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). If the defendant submits affidavits or other evidence, the plaintiff may not rely on the mere allegations in his pleadings but rather must produce contrary evidence supporting the exercise of jurisdiction. *See Carreras v. PMG Collins, LLC*, 660 F.3d 549, 552 (1st Cir. 2011); *Meir ex rel. Meir v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); *see also Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 831 (5th Cir. 1986) (stating that "the allegations of the complaint are taken as true except as controverted by the defendant's affidavits"). If the plaintiff does so, the court will resolve any factual disputes in his favor. *Walk Haydel*, 517 F.3d at 241; *Travelers Indem. Co.*, 798 F.2d at 831.

## III.   Analysis

The personal-jurisdiction analysis has two components. A federal court sitting in diversity must determine: (1) whether the forum State's long-arm statute creates

---

[2] Ultimately, the plaintiff must prove that personal jurisdiction exists by a preponderance of the evidence. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). The issue will often be resolved at trial, especially if factual disputes encompass the court's jurisdiction and the merits of the plaintiff's case. *Id.* Alternatively, the court can hold an evidentiary hearing and resolve factual disputes pre-trial. *Id.* at 241–42.

jurisdiction over a non-resident defendant; and (2), if so, whether the exercise of jurisdiction would comport with the Due Process Clause of Fifth Amendment. *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). Since Texas's long-arm statute reaches to the constitutional limits, the statutory and constitutional questions merge into one. *Id.*

The Due Process Clause prohibits courts from entering judgments binding defendants who have "no contacts, ties, or relations" with the forum State. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945); *see also J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011) (opinion of Kennedy, J.) ("As a general rule, neither statute nor judicial decree may bind strangers to the State."). In *International Shoe Co. v. Washington*, the Supreme Court announced the guiding principle for determining whether the exercise of jurisdiction is permissible:

> "Due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he must have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

*Id.* at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Elaborating on this standard, the Court has explained that jurisdiction may be general or specific. If the defendant has "continuous and systematic" contacts with the forum State, its courts have general jurisdiction and may adjudicate any dispute to which the defendant is a party. *See id.* at 318; *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984). Additionally, the courts may exercise specific jurisdiction when the defendant commits "single or isolated acts" within the forum State and the plaintiff's claims "arise out of or are connected with the activities within the [S]tate." *See Int'l Shoe*, 310 U.S. at 317–19; *Helicopteros*, 466 U.S. at 414 n.8.

In this case, Corder contends that both types of jurisdiction exist. According to Corder, BBG Communications and BBG Global have "continuous and systematic" contacts with Texas, and, in any event, this case arises out of or relates

to their contacts with Texas. As explained below, Corder's arguments are unpersuasive.

A.    *General Jurisdiction*

Courts may exercise general jurisdiction over a defendant when its activities within the forum State are so "'continuous and systematic' as to render [it] essentially at home" there. *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853–54 (2011). This standard is a difficult one to satisfy. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) The plaintiff must demonstrate extensive contacts between the defendant and the forum. *Id.* Repeated contacts with forum residents may not suffice, and random, fortuitous, or attenuated contacts certainly will not do. *Id.* at 608–09.

*Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), is the paradigmatic case of the proper exercise of general jurisdiction. In *Perkins*, a shareholder sued a Philippine mining company in Ohio on causes of action not related to its activities there. *Id.* at 438. The company's president and general manager had returned to Ohio during the Japanese occupation of the Philippines in the Second World War. *Id.* at 447. He stored company files, carried on correspondence, and cut checks in Ohio. *Id.* at 447–48. Additionally, he deposited "substantial balances of company funds" in Ohio banks, and several directors' meetings were held in Ohio. *Id.* at 448. The Supreme Court held that the Ohio courts could exercise general jurisdiction over the company, because its president "carried on in Ohio continuous and systematic supervision of the necessarily limited wartime activities of the company." *Id.* "To the extent that the company was doing any business [at that time], it was doing so in Ohio ...." *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2856 (2011) (discussing *Perkins*).

In contrast, the Court held that general jurisdiction did not exist in *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 (1984). In that

5

case, survivors of U.S. citizens killed in a helicopter crash in Peru sued a Columbian corporation in Texas. *Id.* at 409–10, 412. The plaintiffs argued that the Texas courts could exercise general jurisdiction over the corporation because it had purchased eighty percent of its helicopter fleet in Texas, along with equipment and training services. *Id.* at 411. It had also sent personnel to Texas for training. *Id.* The Supreme Court, however, held that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those  purchase transactions." *Id.* at 418. And the presence of corporate personnel in Texas did not enhance the corporation's contacts, because "[t]he training was part of the package of goods and services purchased." *Id.*

Based on *Perkins* and *Helicopteros*, the Fifth Circuit has stated that general jurisdiction will only exist when the corporate defendant has a business presence *in* Texas. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 611 (5th Cir. 2008); *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999). Doing business *with* Texas is not sufficient. *Johnston*, 523 F.3d at 611; *Access Telecom*, 197 F.3d at 717. Accordingly, contracts to purchase goods or services from a Texas resident, even if entered into regularly, cannot serve as the basis for general jurisdiction. *Johnston*, 523 F.3d at 612*; King v. Hawgwild Air, L.L.C.*, Civil Action 3:08-CV-0153-L, 2008 WL 2620099, at *4 (N.D. Tex. June 27, 2008) ("[R]egardless of whether a defendant is buying or selling goods or services, merely contracting with residents of the forum, even on a regular basis, will not support general jurisdiction.").

Here, BBG Communications's and BBG Global's contacts with Texas are not continuous and systematic and hence do not give rise to general jurisdiction. Unlike the company in *Perkins*, neither BBG Communications nor BBG Global maintain any offices or otherwise own or lease any real property in Texas. None of their

officers or employees work or reside here, and no shareholders' or directors' meetings have been held here. Furthermore, BBG Communications and BBG Global do not maintain or store their records in Texas, and nothing indicates that either company has deposited significant funds in Texas banks. In fact, Corder's complaint alleges that both BBG Communications and BBG Global maintain bank accounts in California and that most of their operations are carried on in San Diego. *See* First Am. Class Action Compl. ¶¶ 49, 22–23, Jan. 31, 2012, ECF No. 40. Therefore, Corder has failed to demonstrate that either company has business presence *in* Texas, and, consequently, general jurisdiction does not exist.

Corder's argument to the contrary is based on BBG Communications's and BBG Global's contracts with NOS. As discussed in detail below, both companies have hired NOS to provide automated and live operator services. NOS is based in Longview, Texas, and these contracts are partially performed in Texas. Furthermore, Corder alleges that BBG Communications and BBG Global constantly communicate with NOS regarding the contracts and that they helped draft a training manual used by NOS's employees.

The contracts and the attendant communications, however, are not enough to render BBG Communications and BBG Global "essentially at home" in Texas. Contracting with a resident corporation to purchase services, by itself, does not confer general jurisdiction on the courts. *Johnston*, 523 F.3d at 612; *Access Telecom*, 197 F.3d at 717 n.6 (stating that the defendant's contracts to purchase consulting and financial services provided by Texas corporations "add little to the issue"). Moreover, communications regarding the performance of a contract do not enhance a defendant's contacts any more than sending personnel to the forum State for training. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 418 (1984). Consequently, the Court finds Corder's general-jurisdiction arguments wanting.

B.    *Specific Jurisdiction*

The next issue is whether the Court can exercise specific jurisdiction over BBG Communications and BBG Global. Specific jurisdiction exists if the defendant purposefully directed his activities at the forum State and the litigation "arises out of or relates to" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (quoting *Helicopteros*, 466 U.S. at 414). If those activities are sufficient, the court then considers whether the exercise of jurisdiction would comport with "traditional notions of fair play and substantial justice." *Id.* at 476 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).[3]

Here, Corder's specific-jurisdiction argument rests on two contacts. First, "the call processing, billing, and taking of monies … from Corder occurred in Texas." Second, BBG Communications's and BBG Global's contracts with NOS were partially performed in Texas. Because of these contracts, the pay phones are programmed in Texas, and all calls are routed through NOS's servers in Longview.

1.    Billing of Texas Residents

The first contact—billing Texas residents and taking of monies from Texas bank accounts—cannot support the exercise of specific jurisdiction because it is not purposeful. The Supreme Court has repeatedly stated that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *see also Rudzewicz*, 471 U.S. at 472 (stating that "a forum legitimately may exercise

---

[3] The defendant must present "a compelling case" that the exercise of jurisdiction would be unreasonable, notwithstanding his contacts with the forum State. *Rudzewicz*, 471 U.S. at 477. The relevant factors include: (1) "the burden on the defendant; (2) the forum State's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

personal jurisdiction over a non-resident who 'purposefully directs' his activities toward forum residents"). "The unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum State." *Hanson*, 357 U.S. at 253; *see also Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990) ("Jurisdiction is improper if grounded in the unilateral activity of the plaintiff.").

For example, in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), two New York residents purchased an automobile from a dealership in New York. *Id.* at 288. The buyers moved to Arizona the following year. *Id.* While they were passing through Oklahoma, they were involved in a collision. *Id.* The buyers then filed a products-liability suit against the dealership and its regional distributor in Oklahoma state court. *Id.* The Supreme Court, however, held that specific jurisdiction did not exist, because the defendants' only connection to Oklahoma—the automobile involved in the collision—was caused by the unilateral activity of the plaintiffs. *Id.* at 298. From the standpoint of the defendants, the fact that automobile suffered an accident in Oklahoma was merely "fortuitous." *Id.* at 295. And the foreseeability of injury in Oklahoma was not "a sufficient benchmark for personal jurisdiction." *Id.* at 295–96.

Likewise, in this case, the placement of the call by a Texas resident and the billing of a Texas bank account were initiated by Corder's unilateral activity. *See Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983) (declining to exercise jurisdiction when the defendant's sole contact with the forum was a transaction "initiated by and substantially negotiated with [the plaintiff's] agent"). According to the complaint, BBG Communications and BBG Global provide long-distance services for the pay phones in the Leipzig airport. Thousands of U.S. troops pass through the area, and any one of them could use the phones to call anyone in the United States. Additionally, BBG Communications and BBG Global

have no control over who places a call, where they live, or where their bank accounts are located.

Thus, the Court cannot say that billing for telecommunications services rendered in Germany should cause BBG Communications and BBG Global to reasonably anticipate being haled into a Texas court. *See Woodson*, 444 U.S. at 297. From their standpoint, Corder's residence in Texas and the location of his bank account in Texas was entirely fortuitous. *See Holt Oil & Gas Corp. v. Harvey*, 801 F.3d 773, 778 (5th Cir. 1986) (holding that the "mere fortuity that [the plaintiff] happens to be a [Texas] resident" is insufficient.) And the fact that the companies could have foreseen that some calls might be placed to and billed in Texas is not sufficient to support the exercise of jurisdiction. *Woodson*, 444 U.S. at 295–96; *see also Diem v. Quinn Hotel Praha, A.S.*, Civil No. H-10-2848, 2012 WL 524182, at *3 (S.D. Tex. Feb. 15, 2012) (holding that a Texas resident's use of a credit card to book a hotel room in the Czech Republic did not confer specific jurisdiction over the hotel's owner).

### 2.    Contracting with a Texas Corporation

The other jurisdictional bases are BBG Communications's and BBG Global's contracts with NOS. Under the contracts, NOS provides automated and live operator services to BBG Communications and BBG Global. NOS processes calls routed to its platform by either company. When a caller uses a pay phone, NOS's automated system first identifies the customer (e.g., BBG Global) and the proper language for the caller (e.g., English). The system then prompts the caller to enter information, such as the destination phone number and certain billing and identity verification information. Callers also have the opportunity to obtain rate information. In addition to processing the calls, NOS provides billing and collection services for intrastate calls.

Moreover, the contracts are connected to Texas. First, NOS is based in Texas. Its automated call services are performed in Longview, Texas, while its live operator call services are performed in Monterrey, Mexico. Additionally, the contracts provide that they "shall be construed and enforced under the laws of the State of Texas." And the parties may request arbitration of "any dispute arising under [the contracts]" in Longview.

The NOS contracts, however, cannot support the exercise of specific jurisdiction, because Corder's claims do not "arise out of or relate to" those contracts. Neither Corder nor any other member of the proposed class is a party to or a third-party beneficiary of the contracts, and none of the claims are based on a breach of the obligations created by the contracts. Instead, Corder's claims arise out of the alleged non-disclosure of the rate at the point of sale in Germany. [4]

The Fifth Circuit's decision in *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327 (5th Cir. 2007), is instructive here. Offshore Technical Services, Inc. (Offshore) is a Texas-based corporation that provides personnel to the hydrocarbon industry to work on offshore platforms. *Id.* at 332. To that end, Offshore retained Fred Freudensprung as an independent contractor to provide hook-up, engineering, planning, inspection, and pipeline work. *Id.* Later, Offshore contracted with Willbros West Africa, Inc. (Willbros) to provide personnel for the performance of Willbros's contracts in Africa. *Id.* Offshore referred Freudensprung to Willbros, and he was dispatched to Nigeria. *Id.* at 333. While he was working off the Nigerian coast, he suffered permanently disabling injuries. *Id.*

---

[4] The Court will not address BBG Communications and BBG Global's principal argument—that Avanticom, a German entity, is responsible for the setting the rates and determining how to disclose them. That factual dispute is tied to the merits of Corder's claims, making it inappropriate for resolution at this time. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008); *see also Jetco Elec. Indus., Inc. v. Gardiner*, 473 F.2d 1228, 1232 (5th Cir. 1973) (stating that determinations on the merits "at this early stage would lead to premature and unnecessary adjudications having no res judicata effect"), *abrogated on other grounds by United States v. Cooper*, 135 F.3d 960, 963 (5th Cir. 1998).

Freudensprung then sued Willbros in Texas, attempting use Willbros's contract with Offshore as the basis for jurisdiction. *Id.* at 343–44. He argued that the court could exercise specific jurisdiction over Willbros because it had: (1) contracted with Offshore, a Texas corporation; (2) agreed to arbitrate any disputes with Offshore in Houston; (3) carried out a long-term business relationship with Offshore; (4) communicated with Offshore in developing and executing the contract; and (5) wired payments to Offshore in Texas. *Id.* at 344.

The Fifth Circuit, however, rejected Freudensprung's arguments and held that "these limited contacts with the forum State were insufficient to support the exercise of jurisdiction over [Willbros]." *Id.* The court noted that Freudensprung was not a party to the contract which he cited as evidence of Willbros's minimum contacts with Texas. Consequently, "the ... litigation [did] not 'arise out of or relate to' [Willbros's] contacts with Texas." *Id.* (citing *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 884 (5th Cir. 1993)).

Similarly, the Fifth Circuit rebuffed an attempt to use a contract as a jurisdictional basis for tort claims in *Kelly v. Syria Shell Petroleum Development B.V.*, 213 F.3d 841 (5th Cir. 2000). That case involved a well in Syria that began leaking oil and natural gas. *Id.* at 844. The well's operator, Al Furat Petroleum Company (Al Furat), contacted Wright, Boots & Coots, L.L.C., which was based in Houston; they eventually entered into a contract in which Wright, Boots & Coots agreed to provide blowout response and well-killing services. *Id.* Pursuant to this agreement, three firefighters were dispatched to Syria. *Id.* Tragically, those firefighters were killed when gas escaping from the well ignited. *Id.*

Their survivors then sued in Texas. *Id.* One of the defendants was Syria Shell Petroleum Development B.V. (Syria Shell). *Id.* Like Freudensprung, the plaintiffs attempted to use the contract between Al Furat and Wright, Boots, & Coots as the jurisdictional hook, arguing that Al Furat had acted as Syria Shell's agent in entering

into it. *Id.* at 854. According to the plaintiffs, "by entering into a contract with a Texas company for services to be performed in Texas, Syria Shell ... established the requisite minimum contacts with Texas." *Id.*

The Fifth Circuit, however, held that there was no specific jurisdiction for Syria Shell. First, the court stated that Syria Shell was not acting as Al Furat's principal for the purpose of executing the contract. *Id.* at 855. And, more important, even assuming that Al Furat's actions were attributable to Syria Shell, the court held that "specific jurisdiction does *not* exist for it, because [the plaintiffs'] claims do *not* arise out of those contacts. Instead they arise out of alleged tortious acts committed by Al Furat in Syria." *Id.*

Furthermore, this Court addressed this issue in *Nocando Mem Holdings, Ltd. v. Credit Commercial de France, S.A.*, No. Civ.A. SA-01-1194-XR, 2004 WL 2603739 (W.D. Tex. Oct. 6, 2004). In *Nocando*, as here, the plaintiffs "assert[ed] tort claims against [a defendant] while relying chiefly on [the defendant's] contractual dealings with [two Texas-based corporations] in their attempt to establish specific jurisdiction." *Id.* at *18. The *Nocando* plaintiffs, who were not parties to the contracts, claimed that they were harmed by the defendant's intentional tortious activities, part of which was carried out through the performance of the contracts. *Id.*

The Court held that the plaintiff's claims did not arise out of or relate to the contracts. *Id.* at *19. It instead applied the jurisdictional standard for intentional-tort claims. *Id.* The Court noted that the defendant must reasonably anticipate being haled into a Texas court, and "the mere performance of a contract, without more, would not ordinarily cause the defendant to reasonably anticipate being haled into court to answer for an alleged intentional tort against a third party." *Id.*

In this case, as in *Freudensprung*, *Syria Shell*, and *Nocando*, the Court cannot exercise specific jurisdiction over BBG Communications and BBG Global.

Corder is not a party to or a third-party beneficiary of the contracts with NOS and, consequently, his claims to not "arise out of or relate to" those contracts. *See id.*; *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2007). As the foregoing discussion makes clear, the plaintiff cannot establish specific jurisdiction over a defendant merely by showing a contract between the defendant and a resident of the forum and alleging that he was harmed during the performance of that contract.[5]

Additionally, Corder's argument, taken to its logical limits, would blur the line between general and specific jurisdiction. Because NOS acts as a medium through which BBG Communications and BBG Global provide services around the globe, Corder's reasoning would allow Texas's courts to hear any dispute between the companies and their customers, regardless of where it arose. If, say, a German called his friend in the Czech Republic but disputed the length of the call, he could presumably sue in Texas solely because his call was processed through NOS's system. This wide-ranging assertion of jurisdiction is inconsistent with the Fifth Circuit's precedent, which states that contracting with a Texas resident does not make a corporation generally amendable to suit in Texas. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 611 (5th Cir. 2008); *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999).

But, Corder argues, BBG Communications and BBG Global should have reasonably anticipated being haled into Texas's courts, because the NOS contracts' choice-of-law clauses selected Texas law and provided for arbitration in Longview. Again, this argument fails to distinguish between general and specific jurisdiction.

---

[5] Indeed, the nexus between the contracts and the plaintiff's claim was stronger in *Freudensprung* and *Syria Shell* than here. In both of those cases, without the contract, the plaintiffs would not have been in the country where they was injured. *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 332–33 (5th Cir. 2007); *Kelly v. Syria Shell Petroleum Dev., B.V.*, 213 F.3d 841, 844 (5th Cir. 2000).

BBG Communications and BBG Global may have expected to litigate any contractual disputes arising between themselves and NOS in Texas. But it does not follow that they should have reasonably anticipated litigating disputes with third parties in Texas, especially when those disputes began 8543 miles away. *See, e.g., Freudensprung*, 379 F.3d at 345 ("[E]ven if [Willbros] may have expected to arbitrate disputes between itself and [Offshore] in Texas, it does not concomitantly follow that [Willbros] reasonably anticipated being haled into Texas court to defend a lawsuit brought by Freudensprung or any other non-party to the contract."); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 481 (1985) (stating that choice-of-law clauses are relevant but "such a provision standing alone would be insufficient to confer jurisdiction" over the contractual dispute).

### C.   Conspiracy

As a last resort, Corder notes that Centris is a Texas resident and that there are "detailed allegations of conspiracy"[6] between BBG Communications, BBG Global, and Centris. The Fifth Circuit, however, has stated that, "[t]o establish [his] prima facie case of specific personal jurisdiction, [the plaintiff] is required to demonstrate that [the defendant] individually, *and not as part of the conspiracy*, had minimum contacts with Texas." *Delta Brands, Inc. v. Danieli Corp.*, 99 F. App'x 1, 6 (5th Cir. 2004) (per curiam) (emphasis added); *see also Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (stating that *International Shoe*'s requirements "must be met as to *each* defendant over whom a court exercises jurisdiction" (emphasis added)). As discussed above, BBG Communication's and BBG Global's minimum contacts

---

[6] These "detailed allegations of conspiracy" are little more than assertions of allegedly unlawful behavior coupled with unsupported accusations that BBG Communications, BBG Global, and Centris conspired to act in such a manner. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (stating that "a conclusory allegation of agreement at some unspecified point does not supply facts adequate to show illegality").

with Texas are not sufficient to support the exercise of specific jurisdiction in this case.

* * * * * * * * *

Therefore, the Court holds that it cannot exercise personal jurisdiction over either BBG Communications or BBG Global. Neither company has "continuous and systematic" contacts with Texas, and Corder's claims do not "arise out of or relate to" their limited activities in this State.

## IV.   Jurisdictional Discovery

The Court now considers whether limited jurisdictional discovery is appropriate.

To be entitled to jurisdictional discovery, the plaintiff must make a "preliminary showing of jurisdiction." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). This preliminary showing is a lesser standard than a prima facie case of jurisdiction; the plaintiff need only present "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts." *Id.* (quoting *Toys 'R' Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)). But the decision to grant discovery ultimately lies within the court's discretion. *See Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000). And any request for additional discovery should explain the type of discovery sought, what facts are expected to be discovered, and how those facts would support the exercise of jurisdiction. *See id.* at 855; *see also Reese v. Anderson*, 926 F.2d 494, 599 n.5 (5th Cir. 1991) ("[V]ague assertions of the need for additional discovery are as unavailing as vague responses on the merits.").

Here, Corder's request for additional discovery has two components. First, he requests to depose: Gregorio Galicot, partial owner of both companies and BBG Global's President; Bryan Rhys, a BBG Communications employee; and Linda Pratt, a Centris employee. Second, Corder requests to submit information obtained

16

while litigating a similar case, *Safir v. BBG Communications, Inc.*, in the Southern District of California.[7]

Corder's request to depose Galicot, Rhys, and Platt is too vague to warrant discovery. Corder indicates that the proposed deponents are better sources of information than those individuals who have submitted affidavits in support of the motion to dismiss. But Corder never explains what additional facts he hopes to extract from the deponents or why their testimony would support the exercise of jurisdiction. Furthermore, Galicot has provided an affidavit in support of the motion, and Corder provides no reason to believe that Galicot's testimony will change if he is deposed. Thus, the request for depositions is unavailing. *See Kelly*, 213 F.3d at 855.

Furthermore, the Court will not authorize the use of the *Safir* discovery materials. In *Safir*, Corder's attorney entered into a stipulated protective order with BBG Communications. Under that order, BBG Communications's attorney was entitled to designate as "confidential" any documents or testimony that he believed, in good faith, contained non-public information that was entitled to confidential treatment. Corder's attorney had the right to challenge the designations. Furthermore, the order stated that any material designated as confidential could only be used in the *Safir* proceedings and not for any other purpose.

This Court will honor that order. During the discovery process in *Safir*, BBG Communications presumably relied on the assurances that the information disclosed would only be used in that proceeding. The Court will not relieve Corder's attorney of his obligations under that order because they are now inconvenient. Additionally, although Corder's attorney now complains that BBG Communications

---

[7] In *Safir*, the Plaintiff alleged that BBG Communications did not disclose the rates and fees from a phone call from a German airport to the Czech Republic. *See Safir v. BBG Commc'ns, Inc.*, Civil No. 10cv2341 AJB (NLS), 2012 WL 398991, at *1 (S.D. Cal. Jan. 10, 2012).

improperly designated information as confidential, he had an opportunity to object to that designation but failed to do so. Furthermore, it is not clear that the *Safjr* materials would be relevant to the jurisdictional issue. That case was heard by a court in California, and BBG Communications's and BBG Global's ties to Texas would not be an issue there. Accordingly, the Court denies Corder's request for discovery.

## V.   Conclusion

Because neither BBG Communications nor BBG Global have the requisite minimum contacts with Texas, this Court's exercise of jurisdiction over them would violate the Due Process Clause. Accordingly, it is

**ORDERED** that the Motion to Dismiss is **GRANTED**. It is further

**ORDERED** that all claims against BBG Communications, Inc. and BBG Global, AG are **DISMISSED** without prejudice for lack of personal jurisdiction.

SIGNED this 30ᵗ day of July, 2012.

**WALTER S. SMITH, JR.**
**UNITED STATES DISTRICT JUDGE**