IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS,
WACO DIVISION

| | | |
|---|---|---|
| RICHARD CORDER et al., | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. W-11-CA-00264 |
| | § | |
| BBG COMMUNICATIONS, INC. et al., | § | |
|     Defendants. | § | |

## ORDER

Before the Court is the Motion to Dismiss filed by the Defendant, Centris Information Services, L.L.C. (Centris). Having considered the motion, the response, the reply, and the applicable legal authority, the Court finds that the motion has merit and should be granted.

## I.   Statement of Facts

For the purpose of deciding this motion, the Court must assume that the facts alleged in the complaint are true and construe them in the light most favorable to the Plaintiffs, Richard and Dharma Corder. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Warth v. Seldin, 422 U.S. 490, 501 (1975).

Richard Corder, a U.S. Army Sergeant, is stationed at Fort Hood in Killeen, Texas. In May 2011, he was deployed to Iraq, and, while en route, his plane stopped for refueling at the airport in Leipzig, Germany. Mr. Corder used a pay phone in the airport's military lounge to call his wife, Dharma. He paid for the call with their joint VISA debit card but never inquired about the cost. Mrs. Corder did not answer, so Mr. Corder left a four-second voice mail. He was later billed $41.14 for the call.

Two affiliated companies, BBG Communications, Inc. and BBG Global, AG (collectively, BBG), operate the phone bank at the Leipzig airport. BBG has

1

contracted with Centris, a Texas corporation. Under these contracts, Centris programs the phones at its headquarters in Longview, Texas, and is "responsible for switching, directing, coordinating, and creating billing information for all of the telephone calls" originating at the Leipzig phone bank. Furthermore, according to the Corders, Centris and BBG conspired to overcharge callers by: (1) programing the phones to only accept debit and credit cards; (2) training operators to "never reveal the true costs of the call unless specifically asked;" and (3) programming the phones so that accessing the rate information would be difficult.

After their attempts to obtain a refund failed, the Corders filed this class-action suit against BBG and Centris. They assert contract and tort claims based on Texas law. In their contract claim, the Corders allege that Centris breached the implied covenant of good faith and fair dealing by imposing unconscionable and undisclosed rates. Their tort claim asserts that BBG and Centris defrauded them by failing to disclose the costs of the phone call.[1] In addition, the Corders assert an unjust-enrichment claim and request declaratory relief.

Centris now moves to dismiss the Corders' complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). It argues that Mrs. Corder lacks standing to pursue her claims. Centris also contends that the complaint should be dismissed, because Texas law does not apply to a transaction that occurred in Germany, and,

---

[1] The Corders actually plead in the alternative, alleging that BBG and Centris "uniformly misrepresented and/or failed to disclose material facts about the amount of fees charged ... for use of [their] pay telephones." First Am. Class Action Compl. 35, Jan. 31, 2012, ECF No. 40. However, the Court will not credit this allegation, because the complaint is devoid of any facts indicating that either BBG or Centris actually misrepresented the rate for the phone call. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that "'naked assertions' devoid of 'further factual enhancement'" will not suffice (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007))). The complaint comes closest to alleging misrepresentation when it discusses BBG's pricing charts. First Am. Class Action Compl. 15, Jan. 31, 2012, ECF No. 40. But it does not allege that Mr. Corder (or anyone else) relied on those charts. *Id.* In fact, the complaint states that the charts "are realistically unavailable to consumers." *Id.*

even if it did, the Corders' factual allegations do not "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

## II. Jurisdiction

Because it implicates this Court's jurisdiction, the Court must address the standing issue first. *See Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990) ("[B]efore a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue."). Centris argues that Mrs. Corder does not have a personal stake in this case because she has not suffered any injury. According to the complaint, Mr. Corder used the phone in the Leipzig airport and the rates were not disclosed to him.

Every party asserting a claim in federal court must establish standing to sue. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004). "In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

The doctrine of standing has two branches—constitutional and prudential. So-called Article III standing is derived from the Constitution, which restricts the jurisdiction of federal courts to "Cases" and "Controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To satisfy the case-or-controversy requirement, the plaintiff must have suffered an "injury in fact" that is fairly traceable to challenged action of the defendant and is likely redressable by a favorable decision of the court. *Id.* at 560–61. That injury must be concrete and particularized and "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (quoting *Whitmore*, 495 U.S. at 155). Additionally, courts have developed prudential standing principles, which are "judicially self-imposed limits on the exercise of federal jurisdiction." *Newdow*, 542 U.S. at 11 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Among those principles is the "general prohibition on a litigant raising another

person's legal rights." *Id.* at 12 (quoting *Allen*, 468 U.S. at 751). The plaintiff "generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

In this case, Mrs. Corder argues that she has standing because both she and Mr. Corder were responsible for paying for the phone call. They actually paid using funds in their joint bank account. Mrs. Corder also emphasizes the time and effort she expended attempting to obtain a refund from BBG and Centris.

Because of her interest in the funds used to pay for the call, Mrs. Corder can satisfy Article III's standing requirements. According to the complaint, Mr. Corder used a VISA debit card linked to a joint bank account to pay for the phone call. Because those funds are presumptively community property, the expenditure harmed both of the Corders. *See* Tex. Fam. Code Ann. § 3.003(a) (West 2006) ("Property possessed by either spouse during ... marriage is presumed to be community property."); *see also Warth*, 422 U.S. at 501 (When determining standing, the court "must construe the complaint in favor of the complaining party."). Furthermore, if the bill had not been paid, the joint community property and Mrs. Corder's interest in Mr. Corder's separate community property would have been subject to liability. *See Nelson v. Citizen's Bank & Trust Co.*, 881 S.W.2d 128, 131 (Tex. App.—Houston [1st Dist.] 1994, no writ). Therefore, because of her interest community funds, Mrs. Corder has suffered an "injury in fact" and satisfies Article III's requirements. *See Forgetaboutit, Inc. v. Warner*, No. 09-04-503-CV, 2005 WL 3219578, at *1 (Tex. App.—Beaumont Dec. 1, 2005, no pet.) (holding that a spouse's interest in lost income gave her standing to sue).

Whether she can also satisfy the prudential standing requirements is highly questionable. Her claims are apparently premised on a violation of Mr. Corder's legal rights and interests. After all, he is the one who placed the phone call at the

4

Leipzig airport. Nothing in the complaint indicates that Mrs. Corder is a party to any contract with BBG or Centris or that BBG or Centris had any obligation to disclose the rate information to her.

The Court, however, does not need to resolve this issue. Unlike Article III's requirements, the courts are not obligated to ensure that the prudential standing requirements are satisfied in every case. *Craig v. Boren*, 429 U.S. 190, 193 (1976); *Franchise Tax Bd. of Cal. v. Alcan Aluminum, Ltd.*, 493 U.S. 331, 338 (1990) (discussing a prudential-standing issue but resolving the case on other grounds). Here, the standing question is ultimately immaterial. Mr. Corder undoubtedly has standing to sue, and his wife's presence in the litigation has no effect on the relief available. And, even assuming that Mrs. Corder has standing, dismissal is still appropriate.

## III.   Sufficiency of the Complaint

The Court now considers whether the Corders' complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

### A.   *Rule 12(b)(6) Standard*

A motion to dismiss for failure to state a claim tests the sufficiency of the complaint under Federal Rule of Civil Procedure 8. Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this rule, the complaint must contain facts that, if true, would "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Facial plausibility requires the plaintiff to allege facts supporting recovery under a viable legal theory. Although heightened fact pleadings of specifics is not required, the plaintiff must make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3. Unsupported accusations,

conclusory assertions, or a "formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Furthermore, regardless of how well-pleaded they may be, the factual allegations must show an entitlement to relief under a valid legal theory. Complaints "based on an outlandish legal theory or on a close but ultimately unavailing one" should be dismissed. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

When examining the complaint, the court engages in a two-part inquiry. First, it must distinguish between factual allegations and legal conclusions, because, unlike the former, the latter are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Second, the court must determine whether those factual allegations "plausibly give rise to an entitlement to relief." *Id.* at 679. It will assume their veracity and construe them in the light most favorable to the plaintiff. *Id.*; *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n.44 (5th Cir. 2011). Those facts must allow the court, using its own experience and common sense, to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678–79.

B.    *Analysis*

In this case, the Corders assert Texas common law causes of action based on activities that primarily occurred in Germany. Centris contends that Texas law cannot apply for a number of reasons: it is preempted by treaty (the Status of Forces Agreement) and federal law (the Federal Communications Act); its application would violate the Dormant Commerce Clause; and its application would run afoul of the doctrine of international comity and the presumption against extraterritoriality. This case, however, can be resolved by answering a narrower question: Under Texas's choice-of-law rules, would Texas law apply if it could? [2]

---

[2] This argument was initially raised in BBG's motion to dismiss. Centris incorporated it by reference. *See* Def. Centris Info. Serv. LLC's Mot. to Dismiss 9, Mar. 16, 2012, ECF No. 53.

1.    Conflict of Law

The first step in the choice-of-law analysis is to determine whether the potentially applicable laws actually conflict. *Sonat Exploration Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 231 (Tex. 2008) ("We need not decide which state's laws apply unless those laws conflict."). That determination necessarily requires the Court to examine the substance of German law, which Centris argues should apply.

The party seeking to apply foreign law has the burden of proving its substance to a reasonable certainty. *In re Avantel, S.A.*, 343 F.3d 311, 321–22 (5th Cir. 2003). The district court is given "wide latitude" in determining whether the party has met its burden. *Id.* at 322. In addition, it "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1. Thus, the court can consider matters outside the pleadings without converting the motion to dismiss into one for summary judgment. *Id.*; *see also Nunez v. Hunter Fan Co.*, 920 F. Supp. 716, 717–18 (S.D. Tex. 1996).

In support of its motion to dismiss, Centris attached the affidavit of Dr. Bernd Holznagel. Dr. Holznagel is the Director of the Institute of Information Telecommunications and Media Law at the University of Münster, Germany. His affidavit includes relevant portions of the German Telecommunications Act of 2004.

In his affidavit, Dr. Holznagel explains that German law only requires that the rates for international phone calls be provided upon request by the caller. It does not impose any obligation to announce or display the rates. Additionally, Dr. Holznagel states that a caller enters into a valid contract with the provider when he uses a public pay phone and obtains a connection, even if the provider did not affirmatively disclose the rate. Under German law, a caller agrees to the rate that

---

Likewise, the Corders incorporated their response (or lack thereof) by reference. *See* Pls.' Opp'n to Def. Centris Info. Serv. LLC's Mot. to Dismiss 2, Apr. 6, 2012, ECF No. 60.

he would have ascertained had he inquired. Moreover, the Corders do not address or dispute the accuracy of Dr. Holznagel's analysis. Thus, the Court finds that Centris has proven the substance of German law to a reasonable certainty.

Furthermore, German law conflicts with the Corders' interpretation of Texas law. The Corders' claims are based on the alleged non-disclosure of the rate for the phone call. They claim that Centris breached the contractual duty of good faith and fair dealing by charging unconscionable fees that were not previously disclosed. Likewise, they claim that Centris committed fraud by not informing Mr. Corder of the rate before he placed his call. However, under German law, Centris was not obligated to announce or display the rate, and Mr. Corder agreed to it by placing the call. Therefore, assuming, without deciding, that the Corders' interpretation of Texas law is accurate, a conflict exists.

   2. "Most Significant Relationship"

To determine which law applies, a federal court sitting in diversity must follow the choice-of-law rules of the forum State. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Texas courts apply the "most-significant-relationship" analysis of the Restatement (Second) of Conflicts of Laws. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984) (adopting the test for contractual disputes); *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979) (adopting the test for tort claims). As its name suggests, this analysis selects the law of the state with the most significant relationship to the parties and the transaction or occurrence. *See, e.g.,* Restatement (Second) of Conflicts of Law §§ 145(1), 188(1) (1971).

Although the "most-significant-relationship" analysis defies mechanical application, the Restatement does provide some guidance for the courts. First, underlying the court's analysis in any choice-of-law inquiry are the policy factors listed in § 6 of the Restatement. Those factors are: (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant

policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) protection of justified expectations; (5) basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of result; and (7) the ease in the determination and application of the law to be applied. *Id.* § 6(2).

Furthermore, the Restatement applies those § 6 factors and identifies contacts that are particularly relevant to specific areas of law. *See, e.g., id.* § 188(2) (identifying five contacts for contract claims). And the Restatement often selects a presumptive choice—the law of the State that will likely apply absent a showing that the § 6 factors require application of another law. *See, e.g., id.* § 188(3).

a.    Contract Claim

Because the Corders do not allege that the contract contained a choice-of-law clause, the Court must apply "the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6." *Id.* § 188(1). In applying the § 6 factors to contract claims, the court should consider the following contacts: (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, place of incorporation, and place of business of the parties. *Id.* § 188(2). Furthermore, the Restatement instructs that the second and third contacts—the place of negotiation and performance—are the most significant. If both of those contacts occur in the same state, that state's law will usually apply. *Id.* § 188(3).

In this case, the majority of the contacts point to Germany. Substantially all of BBG's and Centris's activities *vis-à-vis* Mr. Corder occurred at the airport in Leipzig. The pay phone bank is located there. Mr. Corder tendered payment with his VISA debit card there. And the call was connected there. Thus, Germany is the place of contracting, negotiation, and performance. Texas is only implicated

because it is the Corders' domicile and Centris's place of incorporation and principal place of business.

Of course, the number of contacts is not determinative. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984). "[S]election of the applicable law depends on the qualitative nature of the particular contacts." *Id.* And the court should consider the state policies implicated by the particular substantive issue. *Id.* Here, the Corders' claims can be fairly characterized as raising issues of negotiation (i.e., Centris should have disclosed the rate before Mr. Corder entered into the contract) or performance (i.e., the rate was unconscionable and should not have been imposed at all).

In either event, Germany has the paramount interest. The Restatement advises that the state of negotiation "has an obvious interest in the conduct of the negotiations and the agreement reached." Restatement (Second) of Conflicts of Law § 188 cmt. e (1971). "As a general rule, the issue of non-disclosure in contract negotiation and formation is appropriately resolved according to the law of the state where the negotiation took place and where the contract was formed." *Interwest Med. Corp. v. Longterm Care Found. of Am.*, 748 F. Supp. 467, 469 (N.D. Tex. 1990). Here, the contract was negotiated and formed in Germany. Germany clearly has an interest in regulating the conduct within its borders, including determining what information must be disclosed to customers using German pay phones. Additionally, because BBG and Centris performed their contractual obligations in Germany, Germany has a substantial interest in determining whether the cost of that performance was unconscionable. *See* Restatement (Second) of Conflicts of Laws § 188 cmt. e ("When both parties are to perform in the same state, this state will have so close a relationship to the transaction and the parties that it will often be the state of applicable law, even with issues that do not strictly relate to performance.").

10

Finally, the sole contact with Texas is relatively unimportant. The significant of the parties' domicile, place of incorporation, and principal place of business "depends largely on the issue involved and upon the extent to which they are grouped with other contacts." *Id.* Here, as discussed above, the issues involved are ones in which Germany has the greatest interest in deciding. And, because this contact is the only one that points to Texas, it obviously cannot be grouped with any others. Therefore, the Court concludes that Germany has the most significant relationship to the contractual issues in this case, and German law applies.

> *b.    Tort Claim*

The Restatement provides specific guidance for fraud or misrepresentation claims when the plaintiff allegedly suffered pecuniary harm on account of his reliance:

> "[W]hen the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 ...."

*Id.* § 148(1). Furthermore, in all other cases, the courts should consider the following contacts when applying the § 6 factors: (1) the place where the plaintiff acted in reliance; (2) the place where the plaintiff received the representations; (3) the place where the defendant made the representations; (4) the parties' domicile, place of incorporation, and place of business; (5) the place where the tangible thing that was the subject of the transaction was located at the time; and (6) the place where the plaintiff is to render performance under any contract that he has been induced to enter. *Id.* § 148(2).

Here, the analysis changes slightly, because the Corders have not alleged any facts suggesting that BBG or Centris misrepresented the rate for the call. *See supra* note 1. Instead, the Corders allege that they failed to disclose the rates.

Accordingly, for the second and third contacts, the Court will look to the place whether Centris and BBG should have made the representations and the place where Mr. Corder would have received the representations had they been made.

As with the contract claims, the majority of the contacts point to Germany. The Corders argues that BBG and Centris should have disclosed the rate for the phone call in Germany and that Mr. Corder should have received that information in Germany. Additionally, as discussed above, Mr. Corder relied upon that non-disclosure by entering into a contract with BBG and Centris in Germany. *See id.* § 148 cmt. c (stating that the "plaintiff's initial reliance may consist of his entering into a contract"). Furthermore, he rendered performance under that contract by tendering payment in Germany.

The German contacts are also the most significant. As the Texas courts have noted, "when evaluating fraud-based claims to determine the governing law, the principal focus is where the conduct occurred." *Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 72 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Since the alleged non-disclosure and Mr. Corder's reliance both occurred in Germany, Germany has "the dominant interest in regulating [BBG's and Centris's] conduct and determining whether [the Corders] should receive compensation." *See* Restatement (Second) of Conflicts of Law § 148 cmt. d (1971); *see also id.* § 145 cmt. e. (stating that, when the injury and conduct causing the injury occur in the same state, that state's law should likely apply with respect to issues involving standards of conduct).

Furthermore, "the state where the act or omission occurs [generally] has a real interest in applying its law in order to implement the state's regulatory policy as reflected in that law." *Moody*, 161 S.W.3d at 73. As discussed above, German statutes regulate the telecommunications industry, but they impose no disclosure requirement for ordinary international calls. Since this statutory scheme reflects

Germany's regulatory policies, Germany has "a strong and substantial interest in the application of its laws in furtherance of those policies." *Id.*; Restatement (Second) of Conflicts of Law § 6(c) (1971).

Moreover, Texas is only implicated because it is the Corders' domicile and Centris's place of incorporation and place of business. Although this contact is more significant in a fraud claim than in a contract claim, Restatement (Second) of Conflicts of Law § 148 cmt. i (1971), Texas's interest in protecting its citizens does not outweigh Germany's interest in regulating conduct within its borders. *See Moody*, 161 S.W.3d at 74 (applying New York law to fraud claims brought by Texas investors). The Corders' claims raise questions of what information must be disclosed before a caller uses a public pay phone and how that information must be disclosed. These standards are a natural concern of the place where the disclosures must be made, that is, Germany. Accordingly, the Court finds that Germany has the most significant relationship to the tort claims, and German law applies.

c.   *Conclusion*

In conclusion, because the relationship between the Corders, BBG, and Centris is centered in Germany, the Court finds that German law applies to Corders' breach-of-contract and fraud claims. Because those claims are intertwined with the Corders' unjust-enrichment claim, German law applies to that claim as well. *See Nunez v. Hunter Fan Co.*, 920 F. Supp. 716, 721 (S.D. Tex. 1996) Furthermore, because Centris has shown—and the Corders do not dispute—that its actions were perfectly legal under German law, dismissal is appropriate.

3.   Corders' Arguments

Finally, the Corders' arguments to the contrary unpersuasive. First, the Court notes that the Corders did not perform a choice-of-law analysis or even attempt to argue that Texas has the most significant relationship to the issues raised in this

13

case. Instead, they simply state that courts have frequently "applied the law of a jurisdiction other than the situs of the injury where there existed some other link between that jurisdiction and the occurrence." *See* Pls.' Opp'n to Def. BBG Commc'ns, Inc. and BBG Global, AG's Mot. to Dismiss 14, Mar. 22, 2012, ECF No. 55 (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 315 (1981)). Although this statement is true as a general matter, it says nothing about whether Texas courts would apply Texas law to the conduct at issue here.

Additionally, the Corders suggest that the Court should postpone the choice-of-law analysis because their complaint indicates that some of the relevant conduct occurred in Texas. Choice of law, however, is a threshold issue that sets the framework for the entire litigation. *See, e.g., Enigma Holdings, Inc. v. Gemplus Int'l, S.A.*, Civil Action No. 3:05-CV-1168-B ECF, 2006 WL 2859369, at *6 (N.D. Tex. Oct. 6, 2006). Consequently, it should be resolved as soon as practical. In addition, the Corders have filed this suit as a class action, and class certification would require a prompt choice-of-law analysis. *Castrano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996). Furthermore, although some of Corders' allegations do implicate Texas, the complaint concedes that the most significant contacts occurred in Germany. Thus, the Court sees no need to postpone the choice-of-law analysis.

C.    *Leave to Replead*

Generally, the courts should give the plaintiff at least one opportunity to cure pleading deficiencies before dismissing a case under Rule 12(b)(6). *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). However, the court may deny leave to amend if the plaintiff has already been given several opportunities to cure the deficiencies, *Castro Romero v. Becken*, 256 F.3d 349, 353 (5th Cir. 2001), or has alleged his best case. *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam). Here, after BBG moved to dismiss the Corders' original complaint, the Corders immediately amended their complaint and

joined Centris as a party. Centris then filed the instant motion, which contains arguments identical to those raised in BBG's motion. Because the first motion to dismiss apprised the Corders of the insufficiency of their complaint, the Court will assume that the allegations in the amended complaint are the Corders' best case. Consequently, they will not be given an opportunity to replead. *See Tucker v. United States*, No. 3:08-CV-1589-L, 2009 WL 3047855, at *6 (N.D. Tex. Sept. 23, 2009).

## IV.   Conclusion

The Corders' complaint is based on an untenable legal theory—that Texas law would regulate phone calls made in Germany. Because the Corders' allegations do not show a violation of German law, the Court cannot reasonably infer that Centris is liable for the misconduct alleged. Accordingly, it is

**ORDERED** that the Motion to Dismiss is **GRANTED** and all claims against Centris Information Services, LLC are **DISMISSED** without prejudice. It is further

**ORDERED** that any other motions not previously ruled upon by the Court are **DENIED**.

SIGNED this _30_ day of July, 2012.

_____
WALTER S. SMITH, JR.
UNITED STATES DISTRICT JUDGE